UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M. SHANKEN COMMUNICATIONS, INC.,

                      Plaintiff,

         -against-

CIGAR500.COM INC., ANTHONY
MASCIANGELO, AND MONIQUE
MASCIANGELO,

                    Defendants.

Case No. 07-CIV-7371 (JGK)

## DECLARATION OF ANTHONY MASCIANGELO

I, Anthony Masciangelo, hereby declare as follows:

1.      I submit this declaration in support of defendants' motion to dismiss Plaintiff M. Shanken Communications, Inc.'s ("Shanken's") Complaint for lack of personal jurisdiction over me, my wife, Monique Masciangelo, and Cigar500.com, Inc.

2.      I understand that I have been named personally as a defendant in this action which is pending in New York. I have no personal ties to the State of New York.

3.      I reside and work in Canada and am a Canadian and Italian citizen.

4.      Other than one layover in a New York airport and driving through the State on a few occasions on my way to other destinations, I have not visited New York in approximately fifteen years, either for personal or professional reasons.

5.      I do not own real estate in New York.

6.      I have no personal property located in the State of New York.

7.      I do not maintain a bank account in New York.

8.    Requiring me to defend a law suit in the State of New York would not only be extremely inconvenient, it would cause me undue financial hardship.

9.    I am a principal and a 51% shareholder of the start-up company Cigar500.com ("Cigar500" or "The Company").  Following nearly 24 years of working in marketing and sales in the retail products industry, I founded the Company (while in Canada) in February, 2006 with the goal of developing it into an alternative online source for cigars and related products.

10.    Cigar500 is not located in New York.  The Company is incorporated pursuant to the laws of the Province of Ontario, Canada.  Its corporate offices are located in Ontario, and all of its employees are located in Ontario.

11.    The Company does not have an office in New York.  The Company does not hold bank accounts or other property in New York, and it does not maintain a phone listing in New York.  The Company does not specifically target New Yorkers in its advertising or public relations, nor does it have employees or agents located in New York to promote its interests.

12.    Cigar500 does maintain a website located at www.cigar500.com, the domain name of which was registered in January, 2006.  For convenience, the credit card of my wife, Monique Masciangelo, was used to secure the domain name, but she has no involvement whatsoever in the Company and is not now and has never been an officer, director or employee.

13.    The Cigar500 site is run and maintained by employees in Ontario and, although the site is accessible to the public generally, Cigar500's site does not solicit or target New Yorkers specifically.

14.    I decided to launch Cigar500 gradually and deliberately as a company so that I could carefully gauge its progress. From the date the site was launched in June of 2006 until nearly a year later, the website was run in a "test" mode.

15.    In my role as officer of Cigar500, my only contacts with anyone in New York, prior to the filing of the Complaint in this action, have been telephone conversations with a New York-based Shanken representative, Barry Abrams, who was seeking to sell Cigar500 advertising in *Cigar Aficionado* magazine. During the test phase mentioned above, Mr. Abrams contacted me several times proposing that Cigar500 purchase advertising. I explained on each of those occasions that Cigar500 was not yet ready to embark on such a sizeable advertising campaign, and that I did not believe purchasing such advertising would be an appropriate business decision at that time.

16.    In April 2007, as the business plan for the Company progressed, I determined that the Company was ready to enter the next stage of its marketing and development. When Mr. Abrams contacted me during this time frame, I was willing to consider placing advertisements in *Cigar Aficionado*.

17.    After several discussions by telephone (during which I was always located in Canada), we negotiated and entered into a written contract, dated April 30, 2007, for the placement of nine advertisements over the remainder of 2007 and throughout 2008 at the price of $20,570 per advertisement. I executed that contract in Ontario, Canada.

18.    My discussions with Mr. Abrams also included discussions of welcoming *Cigar Aficionado* readers to the Cigar500 site and using the cover art and other material from the *Cigar Aficionado* issue in which Cigar500's first promotional advertisement would appear. I had seen and, through my marketing background, was familiar with

similar welcome messages in other industries, and with the use of *Cigar Aficionado*'s cover art and ratings on other websites. Mr. Abrams was aware of and consented to this use by Cigar500.

19.    Based on this agreement, Cigar500 developed an advertisement and a promotional campaign, placed its first advertisement in the July/August edition of *Cigar Aficionado* and launched its related promotion on the Cigar500 website. My and my staff's dealings with Mr. Abrams and his staff on this advertising campaign were the extent of Cigar500's business dealings with any company located in the State of New York prior to the filing of the Complaint in this action.

20.    Shortly after the placement of that first advertisement, Shanken breached the contract, refusing to place the additional eight advertisements called for by the contract. On July 31, 2007, Cigar500.com filed a lawsuit in Ontario, Canada against Shanken and Ashton Distributors, Inc. ("Ashton"), stating claims for breach of contract, interference with business relations and violations of Canada's Competition Act for conspiring to raise prices on certain Ashton cigars including those featured in Cigar500's *Cigar Aficionado* advertisement.

21.    Cigar500 has no ongoing contractual relationship with Shanken. All references to *Cigar Aficionado* on the Cigar500 site were removed by the end of September, 2007, following the completion of the advertising and promotional program, and there are no references to *Cigar Aficionado* currently appearing on the Cigar500 site.

22.    Shanken commenced this action on August 17, 2007 in what appeared to be a retaliatory and strategic response to the Canadian action that Cigar500 filed several weeks before. From the launch of Cigar500 on June 1, 2006 until the time of the filing of

the Complaint in this action, Cigar500's revenue from the State of New York totals only $19,500.

23.     Cigar500 remains in the start-up phase today. Its total international revenue from the launch of the Company in June 2006 until the filing of the Complaint in this action is only $260,000. As Cigar500 is in its initial stages of development, it is not positioned to defend a lawsuit in a foreign jurisdiction without undue hardship.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 10, 2008.

Anthony Masciangelo