Lisa T. Simpson
Linda A. Rosenthal
Alison F. Swap
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
(212) 506-5000
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M. SHANKEN COMMUNICATIONS, INC.,<br><br>                              Plaintiff,<br><br>         -against-<br><br>CIGAR500.COM INC., ANTHONY<br>MASCIANGELO, AND MONIQUE<br>MASCIANGELO,<br><br>                              Defendants. | Case No. 07-CIV-7371 (JGK) |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ....................................................................... 2

I.    PERSONAL JURISDICTION OVER THE
DEFENDANTS DOES NOT EXIST ................................................. 4

    A.    This Court Does Not Have Jurisdiction over Monique ............................. 5

    B.    Anthony Is Not Subject to Jurisdiction in New York ................................ 6

        1.    General Jurisdiction under CPLR § 301 Does Not Exist .............. 6

        2.    This Court Does Not Have Jurisdiction
over Anthony under CPLR § 302 ................................................. 7

    C.    Cigar500 is a Canadian Company that Does Not Have Sufficient
Contacts with New York to Support Personal Jurisdiction ....................... 9

        1.    CPLR § 301 Does Not Confer Jurisdiction Over Cigar500 ........... 9

        2.    The Company Does Not Transact Business
in New York Pursuant to CPLR § 302(a)(1) ............................... 10

        3.    There Is Also No Jurisdiction over the Company
Pursuant to CPLR §§ 302(a)(2) and 302(a)(3). ............................ 11

    D.    Considerations of Due Process Further Prevent
this Court's Exercise of Jurisdiction over the Defendants ...................... 13

II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM ............................ 15

    A.    Plaintiff's First Claim for Copyright Infringement
Fails Because Cigar500's Use of the Allegedly
Copyrighted Material Was a Fair Use ...................................................... 15

        1.    Cigar500's Transformative Use of the
Copyrighted Material Weighs in Favor of Cigar500 ................... 16

        2.    The Nature of the Copyrighted Work
Weighs in Favor of Cigar500 ..................................................... 18

# TABLE OF CONTENTS
### (continued)

                                                                                    **Page**

    3.    The Amount and Substantiality of the Portion
Used by Cigar500 Was Reasonable for the
Purposes of Educating Its Customers ........................................... 18

    4.    Cigar500's Use Has No Effect upon
the Potential Market for Plaintiff's Magazine ........................... 19

B.    Plaintiff's Trademark Claims Fail because Cigar500's
Truthful and Descriptive Reference to *Cigar Aficionado*
Is Not Likely to Cause Confusion............................................................... 20

    1.    Cigar500's Reference to *Cigar Aficionado* Was Truthful
and Descriptive ........................................................................... 20

    2.    Cigar500's Use Is a Nominative Fair Use .................................... 22

CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

Page

### CASES

Allojet PLC v. Vantage Assocs.
No. 04 Civ. 05223, 2005 U.S. Dist. LEXIS 4006 (S.D.N.Y. Mar. 15, 2005)...........................6

Am. Distilling & Manuf. Co. v. Amerada Hess Corp.
399 F. Supp. 2d 325 (S.D.N.Y. 2005).................................................................12

Appalachian Enters., Inc. v. ePayment Solutions, Ltd.
No. 01 CV 11502, 2004 WL. 2813121 (S.D.N.Y. Dec. 8, 2004)................................7

Arnold v. ABC, Inc.
No. 06 Civ. 1747, 2007 U.S. Dist. LEXIS 5802 (S.D.N.Y. Jan. 29, 2007)............................24

Barricade Books, Inc. v. Langberg
No. 95 Civ. 8906, 2000 U.S. Dist. LEXIS 18279 (S.D.N.Y. Dec. 19, 2000)................7, 11, 12

Benusan Rest. Corp. v. King
937 F. Supp. 295 (S.D.N.Y. 1996) ..........................................................14

Best Van Lines, Inc. v. Walker
490 F.3d 239 (2d Cir. 2007)..................................................................9

Blanch v. Koons
467 F.3d 244 (2d Cir. 2006)..............................................................17, 18

Campbell v. Acuff-Rose Music, Inc.
510 U.S. 569, 114 S. Ct. 1164 (1994)....................................................17, 18

Cantor Fitzgerald, L.P. v. Peaslee
88 F.3d 152 (2d Cir. 1996).................................................................8

Chambers v. Time Warner, Inc.
282 F.3d 147 (2d Cir. 2002).................................................................22

Champion Spark Plug v. Sanders
331 U.S. 125, 67 S. Ct. 1136 (1947)........................................................21

Cortland Racquet Club, Inc. v. Oy Saunatec, Ltd.
978 F. Supp. 520 (S.D.N.Y. 1997) ..........................................................12

Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.
509 F. Supp. 1036 (S.D.N.Y. 1981).........................................................21

# TABLE OF CONTENTS
(continued)

Page

E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.
  No. 00 Civ. 8670, 2003 U.S. Dist. LEXIS 15256 (S.D.N.Y. Sept. 5, 2003) .........................7, 9

Family Internet, Inc. v. Cybernex, Inc.
  No. 98 Civ. 0637, 1999 U.S. Dist. LEXIS 15549 (S.D.N.Y. Oct. 6, 1999) ...............6, 7, 8, 11

First Nationwide Bank v. Gelt Funding Corp.
  27 F.3d 763 (2d Cir. 1994)..................................................................................................15

Hamilton v. Accu-Tek
  32 F. Supp. 2d 47 (E.D.N.Y. Dec. 10, 1998)......................................................................12

Harper & Row, Publ., Inc. v. Nation Enters.
  471 U.S. 539, 105 S. Ct. 2218 (1984).........................................................................16, 18

Hsin Ten Enter. USA, Inc. v. Clark Enter.
  138 F. Supp. 2d 449 (S.D.N.Y. 2000)...........................................................................5, 10

Hutton v. Priddy's Auction Galleries
  275 F. Supp. 2d 428 (S.D.N.Y. 2003)...................................................................................9

ISI Brands, Inc. v. KCC Int'l, Inc.
  458 F. Supp. 2d 81 (E.D.N.Y. 2006) ....................................................................10, 11, 14

Jacobs v. Verlag
  160 F. Supp. 2d 722 (S.D.N.Y. 2001)...............................................................................6, 7

Jazini v. Nissan Motor Co., Ltd.
  148 F.3d 181 (2d Cir. 1998)...................................................................................................4

Kelly v. Arriba Soft Corp.
  336 F.3d 811 (9th Cir. 2003) ..............................................................................................17

Kramer v. Time Warner, Inc.
  937 F.2d 767 (2d Cir. 1991)................................................................................................15

Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.
  918 F.2d 1039 (2d Cir. 1990)................................................................................................6

Le Book Publ., Inc. v. Black Book Photography, Inc.
  418 F. Supp. 2d 305 (S.D.N.Y. 2005)................................................................................24

# TABLE OF CONTENTS
### (continued)

**Page**

Light v. Taylor
    No. 05 Civ. 5003, 2007 U.S. Dist. LEXIS 5855 (S.D.N.Y. Jan. 29, 2007)............................12

McKee Elec. Co. v. Rauland-Borg Corp.
    20 N.Y.2d 377 (1967) ...................................................................................................9

Merck & Co., Inc. v. Mediplan Health Consulting, Inc.
    425 F. Supp. 2d 402 (S.D.N.Y. 2006)..........................................................................5

Murray v. Cable Nat'l Broad. Co.
    86 F.3d 858 (9th Cir. 1996) ........................................................................................24

NXIVM Corp. v. The Ross Inst.
    364 F.3d 471 (2d Cir. 2004)........................................................................16, 18, 19

Nat'l Fed'n of the Blind, Inc. v. Loompanics Enters., Inc.
    936 F. Supp. 1232 (D. Md. 1996)..............................................................................24

Pianelli v. Hershey
    No. 99- CV-64, 2000 U.S. Dist. LEXIS 758 (N.D.N.Y. Jan. 28, 2000)....................4

Pirone v. Macmillan, Inc.
    894 F.2d 579 (2d Cir. 1990)......................................................................................22

Playboy Enters., Inc. v. Welles
    279 F.3d 796 (9th Cir. 2002) .....................................................................................23

Pony Int'l, Inc. v. Genfoot Am. Inc.
    No. 82 Civ. 6517, 1983 U.S. Dist. LEXIS 15161 (S.D.N.Y. Jul. 27, 1983) ............12

Prestenottes, Inc. v. Coty
    264 U.S. 359, 44 S. Ct. 350 (1924)...........................................................................20

Ronar, Inc. v. Wallace
    649 F. Supp. 310 (S.D.N.Y. 1986) ............................................................................13

Rosenberg v. PK Graphics
    No. 03 Civ. 6655, 2004 U.S. Dist. LEXIS 8266 (S.D.N.Y. May 10, 2004)..............11

Sandoval v. New Line Cinema Corp.
    973 F. Supp. 409 (S.D.N.Y. 1997) .....................................................................16, 19

# TABLE OF CONTENTS
### (continued)

**Page**

Seldon v. Direct Response Techs., Inc.
  No. 03 Civ. 5381, 2004 U.S. Dist. LEXIS 5344 (S.D.N.Y. Mar. 31, 2004) .......................... 11

Siverls-Dunham v. Lee
  No. 05 Civ. 7518, 2006 U.S. Dist. LEXIS 82927 (S.D.N.Y. Nov. 13, 2006) ...................... 13

Sony Computer Ent., Am., Inc. v. Bleem
  214 F.3d 1022 (9th Cir. 2000) ........................................................................ 17

Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.
  No. 00 Civ. 1971, 2000 U.S. Dist. LEXIS 13138 (S.D.N.Y. Sept. 13, 2000) ...................... 10

The New Kids on the Block v. News America Publ'g, Inc.
  971 F.2d 302 (9th Cir. 1992) ................................................................ 22, 23, 24

Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC
  221 F. Supp. 2d 410 (S.D.N.Y. 2002) ........................................................... 24

Tri-Coastal Design Grp., Inc. v. Merestone Merch., Inc.
  No. 05 Civ. 10633, 2006 U.S. Dist. LEXIS 25307 (S.D.N.Y. May 3, 2006) ......................... 4

Turner v. McMurty
  No. 00-55577, 2000 U.S. App. LEXIS 33646 (9th Cir. Dec. 4, 2000) ............................... 19

Universal City Studios, Inc. v. Ideal Publ'g Corp.
  195 U.S.P.Q. (BNA) 761 (S.D.N.Y. 1977) ...................................................... 21

WCVB-TV v. Boston Athletic Assoc.
  926 F.2d 42 (1st Cir. 1991) ................................................................... 21

World-Wide Volkswagen Corp. v. Woodson
  444 U.S. 286, 100 S. Ct. 559 (1980) ........................................................... 13

## TABLE OF CONTENTS
(continued)

Page

### FEDERAL STATUTES

15 U.S.C. § 1114 ..................................................................................................20

15 U.S.C. § 1125(a) .............................................................................................20

15 U.S.C. § 1125(c) .............................................................................................20

17 U.S.C. § 107 ....................................................................................................16

28 U.S.C. 1367(c)(3) ...........................................................................................15

Fed. R. Civ. P. 12(b)(2) ...................................................................................1, 4

Fed. R. Civ. P. 12(b)(6) ...........................................................1, 15, 19, 22, 24

### OTHER AUTHORITIES

4-13 Nimmer on Copyright § 13.05 (2007). .....................................................20

Siegel, NY Prac. § 88, at 135 (2nd ed.) .............................................................13

Defendants Cigar500.com Inc., Anthony Masciangelo, and Monique Masciangelo (collectively "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure, for an order dismissing the Complaint herein, dated August 17, 2007 ("Complaint" or "Cmplt."), for lack of personal jurisdiction and for failure to state a claim.

## PRELIMINARY STATEMENT

On July 31, 2007, Defendant Cigar500.com Inc. ("Cigar500" or the "Company") initiated a lawsuit against Plaintiff M. Shanken Communications, Inc. ("Shanken" or "Plaintiff") in Ontario, Canada, where Cigar500 is located. That action, which is currently pending, states claims for breach of contract based on Shanken's unlawful termination of an advertising contract with Cigar500 (Cigar500 had placed just one of nine agreed-upon advertisements when Shanken purported to terminate) and for violation of Canada's Competition Act based on Shanken's conspiring with another Cigar manufacturer to fix prices and intimidate Cigar500. Two weeks later, in what can best be classified as a retaliatory reflex, if not another attempt to intimidate Cigar500, Shanken commenced this action. Shanken's Complaint seeks judgment not only against the Company, but against its founder, Anthony Masciangelo, and its founder's wife, Monique Masciangelo, as well – a woman who has had no connection with Cigar500 other than to provide her credit card to purchase the Company's domain name.

As detailed below, there is no basis for this Court to exercise personal jurisdiction over any of the defendants. Defendants' contacts are with Canada, not New York. Indeed, Plaintiff has not even attempted to allege in its Complaint any basis upon which jurisdiction can be asserted over Defendants. Moreover, the claims as stated – for copyright and trademark infringement – fail due to fair use of the copyrighted materials

1

and trademarks at issue. For these reasons, the Complaint should be dismissed against all Defendants for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.

**STATEMENT OF FACTS**

Defendant Cigar500 was incorporated in Ontario, Canada in February 2006 for the purpose of selling cigars and cigar-related material over the internet. (Cmplt. ¶ 6). Cigar500 operates a website at www.cigar500.com. (*Id.*). Plaintiff Shanken is a New York-based magazine publisher that publishes both *Cigar Aficionado* and *Wine Spectator* magazines. (Cmplt. ¶ 5).

On August 17, 2007, Shanken commenced this action, naming as defendants not only Cigar500, but Anthony Masciangelo ("Anthony"), the founder of Cigar500, and his wife, Monique Masciangelo ("Monique"), individually, asserting claims for copyright infringement (First Claim), trademark infringement, unfair competition and dilution pursuant to the Lanham Act (Second, Third and Fourth Claims) and defamation (Fifth Claim). Plaintiff's claims arise out of certain alleged uses on the Cigar500 website of the Cigar Aficionado name and other material from the *Cigar Aficionado* magazine. (Cmplt. ¶¶ 44-90). The Complaint lacks a single allegation connecting the individual defendants to the claims asserted. Nor does the Complaint contain even a generalized allegation, let alone facts sufficient to satisfy Plaintiff's burden of proof on this point, as to why a Canadian company and two citizens of Canada, with no apparent ties to New York, should be subject to the jurisdiction of this Court.

As set forth in the Declarations of Monique Masciangelo and Anthony Masciangelo, the Defendants have virtually no contacts with the State of New York. (Declaration of Anthony Masciangelo ("Anthony Decl.") ¶ 2; Declaration of Monique

2

Masciangelo ("Monique Decl.") ¶ 6). Neither Monique nor Anthony resides in New York, has real or personal property in New York, maintains a bank account in New York or has any significant connection to the State. (Anthony Decl. ¶¶ 3-7; Monique Decl. ¶¶ 6-11). Cigar500 has no offices, no employees, no bank accounts, no real estate and no phone listing in New York. (Anthony Decl. ¶ 11). In fact, Cigar500's limited contact with New York consists solely of its Canadian-based negotiations with New York-based plaintiff Shanken in connection with the parties' advertising contract. (*Id.* at ¶¶ 15-18).

As detailed in the Anthony Declaration, in or about the Spring of 2007, plaintiff Shanken and defendant Cigar500 engaged in contract negotiations by telephone, during which Cigar500 always remained in Canada, concerning the sale of advertising space in *Cigar Aficionado* to Cigar500. (Anthony Decl. ¶¶ 16-17). Those negotiations resulted in a contract, executed by Cigar500 in Canada, for the placement of nine full-page advertisements in *Cigar Aficionado*, running through 2008. (*Id.* at ¶ 17). Cigar500 ran its first advertisement in the July/August edition of *Cigar Aficionado*. (*Id.* at ¶ 19). In connection with that advertisement, Cigar500 launched a promotion on its website which forms the basis for Shanken's claims in this action. Specifically, as alleged by Shanken and as is common in the industry, Cigar500 welcomed *Cigar Aficionado* readers to its site (Cmplt. ¶ 23), used a thumbnail image of the cover of one issue of *Cigar Aficionado* (Cmplt. ¶¶ 24, 25) and offered for sale certain cigars touted by *Cigar Aficionado*'s rating system. (Cmplt. ¶¶ 24, 26, 27). Shanken breached the agreement shortly after Cigar500's first advertisement ran, refusing to run any additional advertisements, causing Cigar500 to file suit in Canada. (Anthony Decl. ¶ 20). Shortly thereafter, Shanken filed this action.

As there is no jurisdiction over the Defendants, and since Plaintiff has failed to state any cognizable claim upon which relief can be granted, Plaintiff's Complaint should be dismissed.

## ARGUMENT

### I.

### PERSONAL JURISDICTION OVER THE DEFENDANTS DOES NOT EXIST

When the applicable federal statute does not provide for national service of process, federal courts apply the forum state's personal jurisdiction rules. *Tri-Coastal Design Grp., Inc. v. Merestone Merch., Inc.*, No. 05 Civ. 10633, 2006 U.S. Dist. LEXIS 25307, *9-10 (S.D.N.Y. May 3, 2006). Neither the Lanham Act nor the Copyright Act provide for national service of process. *Id.* at *10. Thus, this Court must first determine whether there is jurisdiction over Defendants under New York's Civil Practice Law and Rules ("CPLR"). If the Court finds that there is, then it must determine whether exercising jurisdiction over the defendant would comport with the Due Process Clause of the Constitution. *Id.* at *9. The plaintiff bears the burden of proof to establish jurisdiction over each defendant. *Id.*; *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (dismissing for lack of jurisdiction and finding that "conclusory non-fact-specific jurisdictional allegations" are insufficient).

Here, Plaintiff has made no allegations whatsoever as to jurisdiction. In fact, Plaintiff has not even specified under which provision of the CPLR jurisdiction is being asserted, let alone alleged facts necessary to survive a motion to dismiss. Accordingly, the Complaint should be dismissed as to all Defendants. *See Pianelli v. Hershey*, No. 99-CV-64, 2000 U.S. Dist. LEXIS 758, *11-12 (N.D.N.Y. Jan. 28, 2000) (dismissing claims against corporate defendant under Fed. R. Civ. P. 12(b)(2) where complaint contained no

4

allegations as to personal jurisdiction); *Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp. 2d 449, 456-57 (S.D.N.Y. 2000) (dismissing claims for failure to allege adequate jurisdictional basis).

Not only has Plaintiff failed to make sufficient allegations establishing Defendants' contacts with New York, it cannot. Defendants do not maintain the ties with New York necessary to establish jurisdiction under the CPLR or the Due Process Clause. Accordingly, the Complaint should be dismissed.

**A.    This Court Does Not Have Jurisdiction over Monique**

Plaintiff asserts that Monique is a "principal" of Cigar500 and the "Registrant" of the domain name. (Compl. ¶ 8). Monique is not a principal of Cigar500. (Monique Decl. ¶ 5). Monique's only involvement with Cigar500 was to provide the credit card for the initial registration of the Cigar500 website in January 2006. (*Id.* at ¶¶ 4-5). Under New York law, the registration of a website is insufficient to establish jurisdiction over an individual defendant. *See Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 419-20 (S.D.N.Y. 2006) (refusing to exercise jurisdiction over registered owner of allegedly infringing website when plaintiffs failed to allege any specific actions by the individual defendant). Other than this one instance, Monique has been, and remains, unassociated with Cigar500.

Moreover, other than three discrete personal visits to New York in the past thirty years, for a grand total of three days, Monique has had, and continues to have, no contact with New York. (Monique Decl. ¶ 6). She does not own real estate or personal property in the State, has no bank account here and does not derive any income from the State. (*Id.* at ¶¶ 7-11). "Where a defendant rebuts a plaintiff's unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction – and

the plaintiff does not counter that evidence – the allegation may be deemed refuted." *Allojet PLC v. Vantage Assocs.*, No. 04 Civ. 05223, 2005 U.S. Dist. LEXIS 4006, *12 (S.D.N.Y. Mar. 15, 2005) (internal citation omitted). Since Plaintiff has not alleged a single fact or supportable reason as to why Monique should be subject to suit in New York, the Complaint against her should be dismissed for lack of personal jurisdiction.

**B.    Anthony Is Not Subject to Jurisdiction in New York**

      **1.    General Jurisdiction under CPLR § 301 Does Not Exist**

Under New York's general jurisdiction statute, CPLR § 301, a foreign entity is subject to general jurisdiction if it is "doing business" in New York. *Jacobs v. Verlag*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001). The "doing business" standard is stringent because if an entity is found amenable to jurisdiction under this provision it "may be sued in New York on causes of action wholly unrelated to acts done in New York." *Id.* (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990)). Thus, in order for an entity to be "doing business" in New York, it must do business "not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985)); *see also Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (same).

It is unclear whether jurisdiction under § 301 can extend to include jurisdiction over individuals at all. *Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637, 1999 U.S. Dist. LEXIS 15549, *9 (S.D.N.Y. Oct. 6, 1999) ("[I]t remains an open question in New York whether section 301 applies to individuals as well as to corporations. . . ."). To the extent §301 does extend to individuals, New York courts have made clear that they must be "doing business" in their individual capacities, and not on behalf of the

corporation. *Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502, 2004 WL 2813121, *3 n.2 (S.D.N.Y. Dec. 8, 2004); *Family Internet*, 1999 U.S. Dist. LEXIS 15549, at *10.

Here, Plaintiff has not and cannot allege that Anthony has "continuous, permanent, and substantial activity in New York" – personal or otherwise. In fact, Anthony has not visited New York for personal or business reasons at all in the past fifteen years. (Anthony Decl. ¶ 4). This is clearly far short of the stringent "doing business" standard required under § 301. *See Jacobs*, 160 F. Supp. 2d at 733 (finding even "occasional trips to New York" for business purposes was insufficient to meet the § 301 standard).

**2.    This Court Does Not Have Jurisdiction over Anthony under CPLR § 302**

Similarly, Plaintiff has not alleged that Anthony is transacting business in New York under § 302(a)(1) or that he regularly does or solicits business in New York under § 302(a)(3).[1] The application of § 302(a)(1) is typically limited to contract actions. *See, e.g., Barricade Books*, 2000 U.S. Dist. LEXIS 18279, at *9 (where action involved no contract or business transaction between the parties, section 302(a)(1) is not applicable; sections 302(a)(2) and (3) are the more applicable provisions); *E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No. 00 Civ. 8670, 2003 U.S. Dist. LEXIS 15256, *19-20 (S.D.N.Y. Sept. 5, 2003). But, even if applicable here, it has been held that, in order for the court to

---

[1] Section 302(a)(2) and (4) are not applicable here. Section 302(a)(2) requires that the defendant be physically present in New York in order for long-arm jurisdiction to attach. *See Family Internet*, 1999 U.S. Dist. LEXIS 15549, at *19-20 (finding 301(a)(2) "only reaches tortious acts performed by a defendant who was physically present in New York when committing those acts"); *Barricade Books, Inc. v. Langberg*, No. 95 Civ. 8906, 2000 U.S. Dist. LEXIS 18279, *10 (S.D.N.Y. Dec. 19, 2000) (same). Since Anthony has not been physically present in New York for over fifteen years, this section cannot apply. (Anthony Decl. ¶ 4). Similarly, § 302(a)(4) is not applicable here because Anthony does not own, use or possess property in New York. (Anthony Decl. ¶¶ 6, 7).

invoke jurisdiction over an individual under § 302(a)(1), the plaintiff must establish that the individual's own contacts with the state satisfy the statute's requirements. *See Family Internet*, 1999 U.S. Dist. LEXIS 15549, at *13-14. Similarly, § 302(a)(3) requires that Anthony regularly do or solicit business from the State or derive substantial revenue from such business. Plaintiff makes no such allegations here, nor can it.

Plaintiff has not alleged that Anthony is normally found in New York, resides in New York, has a bank account here, conducts any personal business activities here or derives any revenue from New York. Plaintiff fails to allege that Anthony has traveled to or visited New York, let alone transacted business in an individual capacity. And, as set forth in the Anthony Declaration, Plaintiff cannot make such allegations. (Anthony Decl. ¶¶ 4-7). Consequently, Plaintiff cannot establish jurisdiction over Anthony pursuant to CPLR § 302(a)(1) or CPLR § 302(a)(3).[2] *See Family Internet*, 1999 U.S. Dist. LEXIS 15549, at *28 (finding lack of jurisdiction over individual under § 302(a)(1)); *see also Girl Scouts of the United States v. Steir*, 102 Fed. Appx. 217, 220 (2d Cir. 2004) (serving as a principal of a company that maintains a website that can be accessed in New York is insufficient to establish "persistent contact" required for 302(a)(3) jurisdiction).

## C. Cigar500 is a Canadian Company that Does Not Have Sufficient Contacts with New York to Support Personal Jurisdiction

### 1. CPLR § 301 Does Not Confer Jurisdiction Over Cigar500

In determining whether a foreign corporation is doing business in New York, courts look to whether the company: (1) has an office in the state; (2) has any bank accounts or other property in the state; (3) has a phone listing in the state; (4) does public

---

[2] Both § 302(a)(2) and § 302(a)(3) explicitly exclude a court's exercise of long-arm jurisdiction for claims based on defamation. *See* CPLR §§ 302(a)(2), 302(a)(3); *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996). Thus, if this Court does not find jurisdiction over Defendants pursuant to CPLR §§ 301 or 302(a)(1), the defamation claim must be dismissed.

relations work in the state; and (5) has individuals permanently located in the state to promote its interests. *E-Z Bowz*, 2003 U.S. Dist. LEXIS 15256, at *16. Cigar500 meets none of these requirements. (Anthony Decl. ¶ 11). Accordingly, there can be no jurisdiction over the Company under § 301.

### 2.   The Company Does Not Transact Business in New York Pursuant to CPLR § 302(a)(1)

Courts have defined "transacting business" as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation omitted). Courts look to the "totality of the defendant's activities within the forum" in determining whether the defendant transacted business in such a way as to constitute "purposeful activity." *Id.* While actual physical contact in New York may not be necessary, there must be "some transaction attributable to the one sought to be held *which occurs in New York.*" *E-Z Bowz, LLC*, 2003 U.S. Dist. LEXIS 15256, at *18-19 (quotations omitted, emphasis in original). Thus, "New York Courts have cautioned… that 'defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact.'" *Hutton v. Priddy's Auction Galleries*, 275 F. Supp. 2d 428, 439 (S.D.N.Y. 2003) (citing *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 383 (1967)).

Cigar500 is not "found" in New York – New York is not its headquarters or a place where it conducts substantial business. (Cmplt. ¶ 7). It has no offices or employees

here. (Anthony Decl. ¶ 11). Plaintiff's Complaint noticeably fails to make a single

allegation purporting to link Cigar500 to the State of New York. The only contact with

New York that the Complaint – if read generously – alludes to is the fact that Cigar500's

website can be accessed by internet users in New York. In the context of transacting

business through the internet, "[t]he guiding principle which has emerged from the case

law is that whether the exercise of personal jurisdiction is permissible is directly

proportionate to the nature and quality of commercial activity that an entity conducts over

the internet." *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 85 (E.D.N.Y. 2006)

(citations omitted). When a website is interactive, as Cigar500 is,[3] it has been held that

jurisdiction must be based on more than just jurisdictional ties created through the

existence of a website accessible in New York – other significant contacts with New

York must also be found.

For example, in *ISI Brands*, the Court refused to extend jurisdiction to a company

when the plaintiff alleged only that the defendant sold products nationally through an

interactive website because the plaintiff did not allege sufficient connections to New

York: "The Plaintiff [did] not claim that the Defendant purposefully solicit[ed] New York

customers; ma[de] mailings to New York residents; enter[ed] contracts in New York; or

that its website [was] in any way targeted towards New York." *See also Girl Scouts*, 102

Fed. Appx. at 219 (where "website is directed at the entire United States" and defendants

"manifested no intent specifically to target New York," court found no "purposeful

activity" in New York in connection with allegedly infringing website and thus no

---

[3] Websites that are commercial in nature and permit customers to place orders and email questions are
considered interactive. *See, e.g., ISI Brands*, 458 F. Supp. 2d at 86; *Student Advantage, Inc. v. Int'l
Student Exch. Cards, Inc.*, No. 00 Civ. 1971, 2000 U.S. Dist. LEXIS 13138, *10-11 (S.D.N.Y. Sept. 13,
2000); *Hsin Ten*, 138 F. Supp. 2d at 456.

jurisdiction under 302(a)(1)); *Rosenberg v. PK Graphics*, No. 03 Civ. 6655, 2004 U.S. Dist. LEXIS 8266, *3-4 (S.D.N.Y. May 10, 2004) ("While some courts have held that a highly interactive website may give rise to personal jurisdiction where otherwise there would have been none. . . in all such cases, unlike here, the plaintiff first established some further contact with the forum state."); *Seldon v. Direct Response Techs., Inc.*, No. 03 Civ. 5381, 2004 U.S. Dist. LEXIS 5344, *15 (S.D.N.Y. Mar. 31, 2004) (finding that "jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the cause of action is filed."). As in *ISI* and *Girl Scouts*, Plaintiff has not and cannot allege that Cigar500 targets New York specifically in any way or that it has sufficient additional contacts with the State of New York such that jurisdiction under Section 302(a)(1) would be appropriate. (Anthony Decl. ¶¶ 10, 11, 13).

### 3. There Is Also No Jurisdiction over the Company Pursuant to CPLR §§ 302(a)(2) and 302(a)(3)

As described above, under § 302(a)(2), a defendant must be physically present in New York in order for long-arm jurisdiction to attach. *See Family Internet*, 1999 U.S. Dist. LEXIS 15549, at *19-20; *Barricade Books*, 2000 U.S. Dist. LEXIS 18279, at *10. Plaintiff does not allege, nor could it, that the Company was physically present in New York when it allegedly committed trademark and copyright violations. The Company has no corporate office, employees, or other physical presence in New York, nor is the website maintained in or otherwise affiliated with New York. (Anthony Decl. ¶ 13). Accordingly, there can be no jurisdiction over the company under § 302(a)(2).

With respect to Section 302(a)(3), as detailed previously, Plaintiff has not alleged that Cigar500 "regularly do[es] or solicit[s] business" in New York or that New York is targeted by its website in any way. *See Seldon*, 2004 U.S. Dist. LEXIS 5344, at *15

(finding website is not "persistent" contact); *Girl Scouts*, 102 Fed. Appx. at 220 (same).

Further, Plaintiff's Complaint is devoid of any allegations that Cigar500 derives

substantial revenue from goods used in New York or internationally.  In fact, at the time

of filing of the Complaint, Cigar500 had only earned approximately $19,500 in New

York sales, a far cry from "substantial" New York revenue.  (Anthony Decl. ¶ 22).  Its

total international sales were just $260,000.  (*Id*. at ¶ 23).  Numerous courts have found

that numbers such as these are not, in absolute terms, "substantial."  *See, e.g.*, *Hamilton v.*

*Accu-Tek*, 32 F. Supp. 2d 47, 57 n.4 (E.D.N.Y. Dec. 10, 1998) (collecting cases and

finding $500,000 to be insubstantial); *Cortland Racquet Club, Inc. v. Oy Saunatec, Ltd.*,

978 F. Supp. 520, 528 (S.D.N.Y. 1997) ($358,000 generated over five years found to be

insubstantial); *Barricade Books*, 2000 U.S. Dist. LEXIS 18279, at *20 ($60,000 to

$110,000 in yearly profits found unsubstantial).  *Compare Am. Distilling & Manuf. Co. v.*

*Amerada Hess Corp.*, 399 F. Supp. 2d 325, 338 (S.D.N.Y. 2005) ($4.2 billion and $6.5

billion in total revenue deemed substantial); *Pony Int'l, Inc. v. Genfoot Am. Inc.*, No. 82

Civ. 6517, 1983 U.S. Dist. LEXIS 15161, *8 (S.D.N.Y. Jul. 27, 1983) ($250 million in

sales found to be substantial).

     Additionally, it has been held that in order to carry out legislative intent, the

Court's "main concern" when determining whether revenue is "substantial" should be the

"overall nature of the defendant's business and the extent to which he can fairly be

expected to defend lawsuits in foreign forums."  *Light v. Taylor*, No. 05 Civ. 5003, 2007

U.S. Dist. LEXIS 5855, *12 (S.D.N.Y. Jan. 29, 2007) (internal citation omitted).  As one

commentator has noted, the "substantial" requirement in 302(a)(3)(ii) "can be called the

'bigness' requirement.  It is imposed . . . to assure that the defendant is economically big

12

enough to be able to defend a New York law suit without undue hardship." Siegel, NY

Prac. § 88, at 135 (2nd ed.).  Start-up companies with limited resources, such as

Cigar500, are not the type of entities that, consistent with fundamental fairness, can be

called upon to bear the expense and inconvenience of litigating in a distant forum. *See*

*Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 317 (S.D.N.Y. 1986) (finding fairness to be one

of the "most important facts" in determining whether revenue is substantial).

**D.    Considerations of Due Process Further Prevent**
**this Court's Exercise of Jurisdiction over the Defendants**

Because the Court does not have jurisdiction over Defendants pursuant to the

CPLR, the Court need not address the due process inquiry. *Siverls-Dunham v. Lee*, No.

05 Civ. 7518, 2006 U.S. Dist. LEXIS 82927, *15 (S.D.N.Y. Nov. 13, 2006).  However, if

the Court were to find jurisdiction over the individual Defendants or Cigar500 under the

CPLR, considerations of due process require that the Court not exercise jurisdiction.

Jurisdiction is proper under the due process clause only if the defendants have certain

"minimum contacts" with the forum state "such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice." *Id.* at *14 (citing *Int'l Shoe*

*Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).  In order to satisfy the due

process standard, the defendants must "reasonably anticipate being haled into court" in

the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.

Ct. 559 (1980).

Neither of the individual defendants have any personal contacts with the State of

New York.  As discussed above with respect to Monique, other than three days spent in

New York for personal reasons, Monique has had no contact with New York in the past

thirty years. (Monique Decl. ¶ 6). Similarly, Anthony has had no personal contacts with the state of New York, having not even visited the State in the past fifteen years. (Anthony Decl. ¶ 4). His only contacts with New York have been in his professional capacity as officer of Cigar500 and even then such contacts have been limited to negotiating from Canada a single, now terminated, contract that does not serve as the basis for any claims asserted here. (*Id.* at ¶¶ 15-20). *See Benusan Rest. Corp. v. King*, 937 F. Supp. 295, 301 (S.D.N.Y. 1996) (finding failure to meet minimum due process requirements when plaintiff failed to show that individual defendant had purposefully availed himself of the benefits of New York because there was "no suggestion that [he] ha[d] any presence of any kind in New York other than [the creation of a] Web site that [could] be accessed worldwide."). Clearly, it would "offend traditional notions of fair play and substantial justice" to subject either Monique or Anthony to suit in New York.

Similarly, the Company does not have sufficient minimum contacts with the State nor the resources to satisfy due process considerations of fairness. The Company has no offices, employees, or persistent contacts with New York. (Anthony Decl. ¶ 11). Its website is not maintained in New York and it does not target New York in any way. (*Id.* at ¶ 13). Since its inception, it has derived only $19,500 in total revenue from New York. (*Id.* at ¶ 22). Clearly, it would offend notions of fair play and substantial justice to subject this Canadian start-up company to suit in New York. *See ISI Brands*, 458 F. Supp. 2d at 90 (finding due process considerations would not be met "absent allegations that the defendant had actively sought to encourage New Yorkers to access [its] site, or that [it] conducted business in New York. . . .") (citation omitted).

14

## II.

## PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM

Even if the Court decides it has sufficient jurisdiction over any of the Defendants, the Complaint should be dismissed for failure to state a claim as a matter of law. On a Rule 12(b)(6) motion to dismiss, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (quotations omitted). "In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated into the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). As a result, the Court may consider the printouts attached as exhibits to Plaintiff's Complaint on this motion. Those exhibits and Plaintiff's Complaint provide the Court with all the information needed to dismiss Plaintiff's copyright and trademark claims as a matter of law on this motion.[4]

### A.    Plaintiff's First Claim for Copyright Infringement Fails Because Cigar500's Use of the Allegedly Copyrighted Material Was a Fair Use

As its first claim, Plaintiff alleges that Defendants violated Plaintiff's copyrights in its magazine by including a copy of the magazine's cover and rankings and descriptions of certain cigars featured in Plaintiff's June 2007 issue of *Cigar Aficionado*. (Compl. ¶¶ 23-27; 44-55, Exhs. E, F). Although Defendants dispute the validity of Plaintiff's alleged copyright, for purposes of this motion, Defendants will accept as true

---

[4] If the Court dismisses Plaintiff's trademark and copyright claims, the defamation claim (Fifth Claim) should also be dismissed. *See* 28 U.S.C. 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim. . . if. . . the district court has dismissed all claims over which it has original jurisdiction.").

Plaintiff's claims to a valid copyright in those materials. Plaintiff has placed before the Court, by its Complaint and the exhibits thereto, the entire extent of Cigar500's alleged infringement. As is clear from those documents, Plaintiff's claim for copyright infringement must be dismissed because Cigar500's use of the alleged copyrighted material qualifies as a fair use under the factors laid out in the Copyright Act.

Courts look to the following factors in determining whether the use of a copyrighted work is a fair use:

1. The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2. The nature of the copyrighted work;

3. The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. The effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. Although Defendants bear the burden of proving that their use was fair, "they need not establish that each factor set forth in § 107 weighs in their favor." *NXIVM Corp. v. The Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004). Rather, "all factors must be explored and the results weighed together in light of the purposes of copyright and the fair use defense." *Id.* Courts have historically regarded the fourth factor to be the most important. *Sandoval v. New Line Cinema Corp.*, 973 F. Supp. 409, 414 (S.D.N.Y. 1997) (*citing Harper & Row, Publ., Inc. v. Nation Enters.*, 471 U.S. 539, 566, 105 S. Ct. 2218 (1984)); *see also* 4-13 Nimmer on Copyright § 13.05 (2007).

1. **Cigar500's Transformative Use of the Copyrighted Material Weighs in Favor of Cigar500**

Considering first the purpose and character of the use, Cigar500's use of the copyrighted work is admittedly commercial. However, the fact that the copyrighted

material is used commercially does not end the inquiry. *See, e.g., Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584-85, 114 S. Ct. 1164 (1994). Rather, the "central purpose" of the first factor is to determine "whether and to what extent the new work is transformative." *Id.* at 579. If the use is transformative, other factors, including commercialism, are of less significance. *Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006).

Cigar500's use is transformative. Cigar Aficionado's cover art and tasting notes were presumably created to sell magazines. An utterly non-transformative use of the copyrighted material would be for Defendants to attempt to sell copies of Plaintiff's magazine on Cigar500 or use Plaintiff's copyrighted material to sell its own magazine. Here, however, Defendants used this material in order to assist consumers in making informed purchases of the cigars available on their website. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003) (finding posting of "thumbnail" images of copyrighted photographs on defendants' website, which helped consumers find where they could buy the images, was fair use because the copies were used for a different purpose than the originals); *Sony Computer Ent., Am., Inc. v. Bleem*, 214 F.3d 1022, 1029 (9th Cir. 2000) (finding fair use when screen shots from Sony computer games were copied and used for comparison purposes on website on which defendant sold software that allowed the games to be played on home computers). As in *Kelly* and *Bleem*, Cigar500's use of the copyrighted material was not a substitute for purchasing Plaintiff's magazine. Indeed, as discussed in factor four below, if anything, the publicity for *Cigar Aficionado* magazine would increase sales in Plaintiff's product. Because Cigar500's use is not a superseding use of the copyrighted material, but rather a use of the copyrighted

material for a different purpose, the use is transformative.  This factor therefore weighs in favor of Cigar500.

### 2.    The Nature of the Copyrighted Work Weighs in Favor of Cigar500

When determining the nature of the copyrighted work, courts look to whether the work is published and whether the work is informational or creative.  *Blanch*, 467 F.3d at 256.  Here, Plaintiff's work is clearly published.  This fact favors Cigar500.  *Id.*  While aspects of Plaintiff's claimed work may be considered creative, and while the creative nature of the copyrighted material typically weighs in favor of the copyright holder, it has been held that this second factor has "limited weight" where the creative work of art is being used for a transformative purpose.  *Id.* at 257 (*quoting Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006)).  Cigar500 is not exploiting the creative aspects of Plaintiff's copyrighted material – it is using the *non-creative*, *informational* aspects of it in order to better inform its customers.  Accordingly, this factor also weighs in favor of Cigar500.

### 3.    The Amount and Substantiality of the Portion Used by Cigar500 Was Reasonable for the Purposes of Educating Its Customers

In determining the amount and substantiality of the portion used, courts look to whether "the quantity and value of the material used are reasonable in relation to the purpose of the copying."  *Campbell*, 510 U.S. at 586 (internal citation omitted).  Courts also consider whether the portion used "is a significant percentage of the copyrighted work, or [whether] the portion used is essentially the heart of the copyrighted work."  *NXIVM*, 364 F.3d at 480 (quoting *Harper & Row*, 471 U.S. at 565).

Here, both considerations favor Cigar500.  Because the purpose of Cigar500's use of the copyrighted material was to convey information about cigars that consumers were

intending to purchase, including the cover and cigar rankings to alert consumers to that information was reasonable. Cigar500 used only the amount of the copyrighted work that was necessary to convey the information it needed to convey. Further, a very insignificant portion of Plaintiff's copyrighted work was used – only the rankings included in a larger narrative, and only a marginal part of the magazine as a whole. *See NXIVM*, 364 F.3d at 480.

### 4. Cigar500's Use Has No Effect upon the Potential Market for Plaintiff's Magazine

Finally, and most importantly, courts consider the economic impact on the allegedly infringing use upon the copyright owner. "The focus here is on whether defendants are offering a market substitute for the original." *NXIVM*, 364 F.3d at 481. Here, there is no argument that Cigar500 is offering a market substitute for the original. Plaintiff is in the business of selling magazines. (Cmplt. ¶ 5). Cigar500 offers a website whereby consumers can purchase cigars over the internet. (Cmplt. ¶ 6). By posting a picture of the cover of the *Cigar Aficionado* magazine, and including a description of cigars that were found in that magazine, Cigar500 in no way suppressed or destroyed the market for the original work. If anything, Plaintiff was provided free publicity for its magazine through Cigar500's website. Accordingly, this factor weighs heavily in Cigar500's favor.

Since the four fair use factors, and particularly the most important fourth factor, weigh in favor of Cigar500, Plaintiff's copyright claim must be dismissed. *Sandoval*, 973 F. Supp. at 414; *Turner v. McMurty*, No. 00-55577, 2000 U.S. App. LEXIS 33646, *3 (9th Cir. Dec. 4, 2000) (affirming dismissal of copyright infringement claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim).

19

**B.    Plaintiff's Trademark Claims Fail because Cigar500's
Truthful and Descriptive Reference to *Cigar Aficionado*
Is Not Likely to Cause Confusion**

Plaintiff's Complaint alleges that Cigar500's use of "Cigar Aficionado" on the

Cigar500 website constitutes trademark infringement under 15 U.S.C. § 1114 (Second

Claim), unfair competition under 15 U.S.C. § 1125(a) (Third Claim), and trademark

dilution under 15 U.S.C. § 1125(c) (Fourth Claim).  (Cmplt. ¶¶ 56-80).  As with

Plaintiff's copyright claim, the entirety of the allegedly infringing uses have been placed

before the Court in Plaintiff's Complaint and Exhibits E and F thereto.  Plaintiff's

Complaint identifies the following uses of "Cigar Aficionado" as the basis for its

trademark claims:  (1) the appearance on the Cigar500 website of a statement that reads

"Welcome *Cigar Aficionado* Readers!" (Compl. ¶ 23); (2) a frame on the website that

says "On Sale! The 6 Cubans *Cigar Aficionado* Rated 91 or Better" (Compl. ¶ 24) and (3)

a page describing certain cigars as being rated "rated 91 or better" by "*Cigar Aficionado*"

magazine and that further contains the language "The 6 Cubans that *Cigar Aficionado*

calls 'Outstanding'" (Compl. ¶ 26).  Because each of these alleged uses of "Cigar

Aficionado" does nothing more than correctly and accurately reference and describe the

*Cigar Aficionado* magazine, without any likelihood of confusion, Plaintiff's Lanham Act

claims must be dismissed for failure to state a claim.

**1.    Cigar500's Reference to *Cigar Aficionado*
Was Truthful and Descriptive**

The Supreme Court has long held that it is not taboo to use a trademark in a

manner that "tells the truth" and does not deceive the public.  Applying this principle, in

*Prestenottes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S. Ct. 350 (1924), the United States

Supreme Court concluded that the defendant did not violate Coty's well-known

trademark by repackaging powder and perfume and identifying the goods as having originated from Coty. The Court found that the defendant was "only telling the truth" by its use of Coty's name and held that a plaintiff does not have "the naked right alleged to prohibit [a] defendant from making even a collateral reference to the plaintiff's mark." *Id.* at 369. This principle was affirmed in *Champion Spark Plug v. Sanders*, 331 U.S. 125, 130, 67 S. Ct. 1136 (1947). *See also Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, 509 F. Supp. 1036, 1042 (S.D.N.Y. 1981) ("[C]ollateral and truthful references to the trademark of another are permissible as long as the 'unauthorized' reference does not cause confusion. . ."; finding that Lanham Act does not prohibit defendant from using plaintiff's mark to accurately recount the relationship between the parties) (internal quotation omitted).

It is clear from Plaintiff's Complaint and Exhibits E and F that Cigar500's use of the Plaintiff's trademark was descriptive and meant to make truthful and accurate reference to the *Cigar Aficionado* magazine. The words "Cigar Aficionado" were not being used in a trademark sense at all. Rather, they were being used to reference the title of the magazine so as to provide customers with information about the cigars they may be interested in purchasing. Such truthful and accurate use is not actionable under the Lanham Act. *See Universal City Studios, Inc. v. Ideal Publ'g Corp.*, 195 U.S.P.Q. (BNA) 761, 762 (S.D.N.Y. 1977) (defendants use of the trademarked words "Hardy Boys" in it magazine in connection with photographs of the actors from that television series held to be a descriptive use that was unlikely to lead to confusion); *WCVB-TV v. Boston Athletic Assoc.*, 926 F.2d 42, 46 (1st Cir. 1991) (television station's broadcast of the words "Boston Marathon" without permission held to be a descriptive fair use since

viewers "will believe simply that Channel 5 will show. . . the marathon, not that Channel 5 has some special approval . . ."); *Pirone v. Macmillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) (finding defendant's use of Babe Ruth's name in a calendar featuring baseball players and baseball memorabilia was not trademark use, but was "merely descriptive of the calendar's subject matter" and thus not infringement).  Dismissal pursuant to Rule 12(b)(6) is therefore appropriate.

### 2.    Cigar500's Use Is a Nominative Fair Use

Cigar500's reference to *Cigar Aficionado* magazine also falls squarely within the doctrine of "nominative fair use."  This doctrine, which permits descriptive and referential use of another's trademark, was first coined by the Ninth Circuit in *The New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  In *New Kids*, the band The New Kids on the Block brought suit against two national newspapers for conducting unauthorized telephone polls, in which they referred to the band by its name, concerning the relative popularity of certain members of the band.  The court concluded that the use was fair use because it was truthful and descriptive and thus not likely to cause confusion. *Id.* at 307-08; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 156 (2d Cir. 2002) (recognizing the doctrine of nominative fair use in the Second Circuit).

New Kids set out the following test for nominative fair use: (1) the product or service in question is not readily identifiable without the mark; (2) only as much of the mark as is reasonably necessary is used; and (3) the user does not do anything to suggest sponsorship or endorsement of the product. *New Kids*, 971 F.2d at 308.  Cigar500's use of "Cigar Aficionado" satisfies each of these requirements.  First, *Cigar Aficionado* magazine is not readily identifiable without using "Cigar Aficionado."  Although it might

have been possible to refer to *Cigar Aficionado* as "a magazine dedicated to the appreciation of cigars, fine dining and entertaining," it is far simpler to refer to the name of the magazine. *Id.* at 971 F.2d at 306 ("[O]ne might refer to the 'two time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls.").

Second, Cigar500 only used as much of the mark, specifically the name of the magazine, as was necessary to invoke the publication. In assessing this factor, courts often look to whether a defendant has imitated the design of the mark in its allegedly infringing work. In *New Kids*, the defendants "[did] not use the New Kids' distinctive logo or anything else that isn't needed to make the announcements intelligible to readers." *Id.* at 308; *see also Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 803 (9th Cir. 2002) (fair use found where defendant "use[d] only the trademarked words, not the font or symbols associated with the trademarks."). Similarly here, in each of the uses cited by Plaintiffs in their Complaint as the basis for its Lanham Act claims (Compl. ¶¶ 23, 24, 26), Cigar500 used only the words "Cigar Aficionado" and did not take any other identifying characteristics of Plaintiff's mark.

Finally, there is no suggestion of sponsorship or endorsement of the Cigar500 site by *Cigar Aficionado* magazine. By saying that it sells cigars that received certain rankings from *Cigar Aficionado* and welcoming *Cigar Aficionado* readers, Cigar500 did not suggest endorsement. Examples of websites posting that products were "seen in" a certain magazine, or welcoming readers of a magazine in which products were advertised are legion. It is also common for rankings of products to appear on retail sites selling those products. Due to the common nature of this practice, consumers are used to such

references and are not likely to assume that there is any sponsorship or endorsement as a result.[5]

Since Cigar500's reference to *Cigar Aficionado* was descriptive and truthful and additionally qualifies as a nominative fair use, Plaintiff's trademark claims should be dismissed. *See New Kids*, 971 F.2d at 309; *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (affirming dismissal of trademark claims when, taking the facts Plaintiff alleges as true, there was no likelihood of confusion); *Arnold v. ABC, Inc.*, No. 06 Civ. 1747, 2007 U.S. Dist. LEXIS 5802, *12-13 (S.D.N.Y. Jan. 29, 2007) (granting defendant's motion to dismiss trademark infringement claims because plaintiff alleged no set of facts showing consumer confusion or that defendant intended to conflate its show with plaintiff's show); *Le Book Publ., Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 307-08 (S.D.N.Y. 2005) (finding no likelihood of confusion and dismissing claim under Rule 12(b)(6)); *Nat'l Fed'n of the Blind, Inc. v. Loompanics Enters., Inc.*, 936 F. Supp. 1232, 1241 (D. Md. 1996) ("[I]t is well established that the use of a registered mark is not prohibited if the use is intended merely to refer to the holder of the mark.").

---

[5] Plaintiff's dilution claim (Fourth Claim) must be dismissed on this ground as well. As there is no basis for believing that *Cigar Aficionado* is in any way sponsoring or endorsing Cigar500, there is similarly no basis to believe that a truthful reference to *Cigar Aficionado* on the Cigar500 website would cause consumers to think negatively of the magazine, the mark, or Shanken. *See, e.g., Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 423 (S.D.N.Y. 2002) (dismissing dilution claim where "no rational jury" would find that plaintiff's mark "would suffer negative associations through defendant's use.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Plaintiff's

Complaint be dismissed, with prejudice, in its entirety.

Dated:   New York, New York
         January 11, 2008

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
        Lisa T. Simpson
        Linda A. Rosenthal
        Alison F. Swap

Attorneys for Plaintiffs Cigar500.com
Inc., Anthony Masciangelo and Monique
Masciangelo

666 Fifth Avenue
New York, New York 10103
(212) 506-5000 – Telephone
(212) 506-5151 – Fax