UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
M. SHANKEN COMMUNICATIONS, INC.,            :
                            Plaintiff,            :
                                                 :
        -against-                                :
                                                 :        **No. 07-CIV-7371 (JGK)**
CIGAR500.COM INC., ANTHONY                       :
MASCIANGELO, AND MONIQUE                         :
MASCIANGELO,                                     :
                                                 :
                        Defendants.              :
                                                 :
------------------------------------------------------------- x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


### ORAL ARGUMENT REQUESTED


**REED SMITH LLP**

Peter D. Raymond (PR 3029)
Emily Kirsch (EB 4216)
Wallace B. Neel (WN 0038)
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*M. Shanken Communications, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

ALLEGATIONS OF THE COMPLAINT.................................................................3

ARGUMENT ..........................................................................................................7

POINT I: MOTION TO DISMISS STANDARD ....................................................7

POINT II: NEW YORK LAW PROVIDES TWO SEPARATE BASES  FOR LONG-
ARM JURISDICTION OVER ALL THREE DEFENDANTS.............................7

    A.    The Defendants Have All Committed Tortious Acts
Outside  of New York Which Have Caused Harm Within
New York...........................................................................................8

    B.    Defendants Are "Doing Business In New York" Not Only
Through The Cigar500 Website, But Also Through Sales
And Advertising..............................................................................10

    C.    Because New York Denies Corporate Employees The
Protections Of The Fiduciary Shield, Long-Arm
Jurisdiction Extends To Anthony and Monique
Masciangelo Personally. ...............................................................13

    D.    The Exercise of Jurisdiction Over The Defendants
Comports with Due Process...........................................................15

POINT III: PLAINTIFF HAS INDISPUTABLY STATED COPYRIGHT AND
TRADEMARK CLAIMS AND DEFENDANTS CANNOT ESTABLISH
THAT THEIR USE WAS FAIR AS A MATTER OF LAW...............................16

    A.    Defendants' Motion To Dismiss Plaintiff's Copyright
Claim Must Be Denied Because Defendants' Use of
Plaintiff's Marks Is Not A Fair Use...............................................16

    B.    Defendants' Motion To Dismiss Plaintiff's Trademark
Claims Must Be Denied Because Defendants' Use of
Plaintiff's Marks Is Not A Fair Use...............................................21

CONCLUSION.....................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Alpha Int'l, Inc. v. T-Reprods., Inc.,*
   No. 02-Civ.-9586 (SAS), 2003 WL 21511957 (S.D.N.Y. 2003) ..........................................13

*Alpha Int'l, Inc. v. T-Reproductions Inc.,*
   No. 02-Civ.-9586 (SAS), 2003 WL 21511957 (S.D.N.Y. 2003) ...............................................2

*America Geophysical Union v. Texaco, Inc.,*
   60 F.3d 913 (2d Cir. 1995) .....................................................................................19, 20

*America Network, Inc. v. Access America/Connect Atlanta,*
   975 F.Supp. 494 (S.D.N.Y. 1997) ..........................................................................................10

*Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez,*
   171 F.3d 779 (2d Cir. 1999) ...................................................................................................11

*Bill Graham Archives v. Dorling Kindersley Ltd,,*
   448 F.3d 605 (2d Cir. 2006) ...................................................................................................18

*Blanch v. Koons,*
   467 F.3d 244 (2d Cir. 2006) ...................................................................................................17

*CPC International, Inc. v. McKesson Corp.,*
   70 N.Y.2d 268, 519 N.Y.S.2d 804, 514 N.E.2d 116 (N.Y. 1987).........................................13

*Campbell v. Acuff-Rose Music, Inc.,*
   510 US 569 (1994)............................................................................................................16, 17

*Car-Freshner v. S.C. Johnson & Son, Inc.,*
   70 F.3d 267 (2d. Cir. 1995) ....................................................................................................22

*Castle Rock Entertainment v. Carol Publ'g Group, Inc.,*
   150 F.3d 132 (2d Cir. 1998) .......................................................................................17, 18, 20

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d. Cir. 2002) ............................................................................................21, 24

*Citigroup,*
   97 F. Supp. at 568 (S.D.N.Y. 2000) .........................................................................................9

*Citigroup Inc. v. City Hldg. Co.,*
   97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...................................................................8, 10, 11, 15

*Cosmetically Sealed Industrial, Inc. v. Chesebrough-Pond's USA Co.*,
  125 F.3d 28 (2d Cir. 1997) ...................................................................................22

*Cuisinarts, Inc., v. Robot-Coupe International Corp.*,
  509 F.Supp. 1036 (S.D.N.Y. 1981) ..................................................................23, 24

*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*,
  228 F.3d 56 ...........................................................................................................21

*Editorial Musical Latino Americana S.A. v. Maritime International Records, Inc.*,
  829 F.Supp 62 (S.D.N.Y. 1993) ..................................................................9, 13, 14

*Fashion Fragrance & Cosmetics v. Croddick*,
  No. 02 CV 6294(WK), 2003 WL 342273 (S.D.N.Y. 2003)..................................11

*Girl Scouts of U.S. v. Steir*,
  102 Fed. Appx. 217 (2d Cir. 2004)......................................................................12

*Harper & Row Publishers v. Nation Enterprises*,
  471 U.S. 539 (1985)........................................................................................16, 20

*Hsin Ten Enterprise USA Inc. v. Clark Enterprises*,
  138 F. Supp. 2d 449 (S.D.N.Y. 2000) ..................................................................11

*ISI Brands, Inc. v. KCC International, Inc.*,
  458 F. Supp. 2d 81 (E.D.N.Y. 2006) ....................................................................12

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945)...............................................................................................15

*Jones v. Ground Zero Entertainment*,
  No. 05 Civ. 6461(JSR), 2006 WL 1788949 (S.D.N.Y. June 28, 2006) ................25

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ................................................................................18

*Kossoff v. Samsung Co.*,
  123 Misc.2d 177, 474 N.Y.S.2d 180 (Sup. Ct. N.Y. Co. 1984) ...........................14

*Kreutter v. McFadden Oil Corp.*,
  71 N.Y.2d 460, 522 N.E.2d 40 (N.Y. 1988)........................................................13

*Le Book Public, Inc. v. Black Book Photog., Inc.*,
  418 F. Supp. 2d 305 (S.D.N.Y. 2005) ..................................................................22

*New Kids on the Block v. News America Publ'g,*
    971 F.2d 302 (9th Cir. 1992) ........................................................................23, 24

*Nihon Kezai Shimbun v. Comline Bus. Data, Inc.,*
    166 F.3d 65 (2d Cir. 1999) ...............................................................................18

*Obabueki v. I.B.M. Corp.,*
    Nos. 99 Civ. 11262(AGS), 99 Civ. 12486( 2001 WL 921172 (S.D.N.Y. 2001)....................11

*Pilates, Inc. v. Pilates Institute, Inc.,*
    891 F.Supp. 175 (S.D.N.Y. 1995) ...............................................................13, 14

*Playboy Enterprises, Inc., v. Welles,*
    279 F.3d 796 (9th Cir. 2002) ............................................................................24

*Rosenberg v. PK Graphics,*
    No. 03-C 2004 U.S. Dist. LEXIS 8266 (S.D.N.Y. 2004)........................................12

*Scott v. National Ass'n for Stock Car Racing, Inc.,*
    No. 06 Civ. 6029 (DAB), 2008 WL 217049 (S.D.N.Y. Jan. 17, 2008) .................................8

*Seldon v. Direct Response Techs.,*
    No. 03 Civ. 5344, 2004 U.S. Dist. LEXIS 5344 (S.D.N.Y. 2004)........................................12

*Sony Computer Entertainment America, Inc. v. Bleem, LLC,*
    214 F.3d 1022 (9th Cir. 2000) ..........................................................................19

Turner v. McMurty, No. 00-55777, 200 U.S. App. LEXIS 33646 (9th Cir. Dec. 4, 2000) ..........17

*Wright v. Warner Books, Inc.,*
    953 F.2d 731 (2d Cir. 1991) .............................................................................16

## STATUTES

12 U.S.C.A. § 95a (2006) ........................................................................................7

15 U.S.C. §1114.................................................................................................21

15 U.S.C. §1125(a) ............................................................................................21

15 U.S.C.A. §1115(b)(4) (2006)..............................................................................22

17 U.S.C.A. § 107 (2006) .....................................................................................17

## ADDITIONAL AUTHORITIES

*Pierre N. Leval, Toward A Fair Use Standard,* 103 Harv. L. Rev. 1105, 1111 (1990) ............ 18, i

Plaintiff M. Shanken Communications, Inc. ("Shanken"), by its counsel, Reed Smith LLP, respectfully submits this Memorandum of Law and the accompanying February 22, 2008 Declaration of Peter D. Raymond, Esq. (the "Raymond Decl."), in opposition to the Motion to Dismiss (the "Motion") filed by defendants Cigar500.com, Inc. ("Cigar500") and Anthony and Monique Masciangelo (collectively, "Defendants," and each a "Defendant").

## PRELIMINARY STATEMENT

Shanken holds several trademarks and copyrights related to *Cigar Aficionado* magazine, which is an authoritative source among cigar smokers. Defendants, who sell cigars through their www.cigar500.com website (the "Cigar500 Website"), have brazenly displayed several of Shanken's trademarks and copyrighted images on that website, in a blatant attempt to increase their sales by implying that *Cigar Aficionado* endorses or approves their website. Shanken has brought this action to protect its valuable intellectual property and eliminate any confusion being caused by Defendants' unauthorized use of Shanken's trademarks and copyrights.

Defendants have moved to dismiss all claims in the Complaint (the "Compl.") based upon this Court's purported lack of jurisdiction over them, and have further moved to dismiss Plaintiff's claims for trademark and copyright infringement based upon the "fair use" doctrine.

Defendants' Motion is baseless and should be denied in full. First, the New York long-arm statute provides two separate bases for the exercise of jurisdiction over each of the Defendants, and the facts alleged in the Complaint amply support either long-arm basis.

In the first instance, all three Defendants have committed tortious acts outside of New York which have caused harm within New York. Defendants' Cigar500 Website contains unauthorized and infringing uses of trademarks and copyrighted materials, which constitute a "tortious act" under New York's long-arm statute. Moreover, because Shanken is a New York

company, the harm to Shanken is occurring in New York. Thus, Defendants are subject to long-arm jurisdiction under CPLR 302(a)(3).

An alternative, and equally valid, basis for long-arm jurisdiction exists under CPLR 302(a)(1), because all three Defendants transact business in the state of New York. The Cigar500 Website is highly-interactive, meaning that it allows customers to shop and place orders online, create accounts, and contact customer service representatives by email. That fact alone is sufficient under CPLR 302(a)(1). However, Defendants have further business contacts with New York. For example, the Cigar500 Website "GUARANTEE[S] DELIVERY IN THE USA," and Defendants admit in the Motion that nearly ten percent (10%) of all sales revenue the Cigar500 Website has ever generated has come from customers within New York. Moreover, Defendants acknowledge that they recently entered into a contract for advertising with Manhattan-based Shanken.[1] Under any standard, Defendants are doing business in this state.

Anthony and Monique Masciangelo cannot avoid the reach of long-arm jurisdiction by hiding behind the corporate shell of Cigar500. While the corporate shell may or may not ultimately relieve the Masciangelos of personal liability for Shanken's damages, it does not protect them from the exercise of long-arm jurisdiction, because New York does not recognize the "fiduciary shield" doctrine as a basis for avoiding long-arm jurisdiction. Thus, the

---

[1]    The Motion is supported by a Memorandum of Law ("Def. Mem."), a Declaration of Monique Masciangelo ("Monique Masciangelo Decl."), and a Declaration of Anthony Masciangelo ("Anthony Masciangelo Decl."), the latter of which admits in paragraph 22 that Cigar500 has derived $19,500 from sales in New York state since 2006. Because Defendants have interjected facts into the Court's deliberations on this Motion, they cannot object to the use of those facts to prove that they transact business in this state. See, e.g., Alpha Int'l, Inc. v. T-Reproductions Inc., No. 02-Civ.-9586 (SAS), 2003 WL 21511957, at * 3 (S.D.N.Y. 2003) (denying motion to dismiss for lack of personal jurisdiction upon, inter alia, defendant's own statement in submission to court that it "sold at least one accused product to a New York resident").

Masciangelos are subject to personal jurisdiction based upon the allegations of the Complaint that they are principals of the company and controlled the infringing website.

Thus, because all three Defendants are subject to personal jurisdiction in this Court under either one of two applicable long-arm tests, the portion of the Motion seeking to dismiss for lack of personal jurisdiction should be denied.

Defendants' attempt to dismiss Plaintiff's First through Fourth claims (the copyright and trademark infringement claims) should also be denied, as both grossly premature and legally incoherent. Defendants do not claim that the causes of action are inadequately pleaded (which is the only appropriate argument on a motion to dismiss). Rather, they claim that they are entitled to judgment because they have demonstrated the merits of their affirmative defense of fair use. However, in both the copyright and trademark contexts, "fair use" is an inquiry that turns on the particular facts of the case, and is, therefore, not an appropriate basis for a 12(b)(6) motion. Moreover, with respect to both the trademark and copyright claims, the Defendants' legal analysis behind their contention of fair use is fatally flawed, as explained in Point III *infra*.

For the reasons set forth herein, the Motion should be denied.

## ALLEGATIONS OF THE COMPLAINT

Shanken, a New York corporation based in Manhattan, publishes *Cigar Aficionado* magazine, which has built a reputation as an authoritative source of information for cigar smokers. Compl. ¶ 5.[2] Shanken owns several federally-registered trademarks and numerous copyrights relating to *Cigar Aficionado*. Id. ¶¶ 10-21.

Defendants sell cigars online through the Cigar500 Website, which has the URL address of http://www.cigar500.com. Id. ¶¶ 6-8, 22. Defendants Anthony and Monique Masciangelo are

---

2 The Complaint is annexed as Exhibit A to the Raymond Declaration.

the principals of Defendant Cigar500. Id. ¶¶ 7-8. Moreover, Defendant Anthony Masciangelo is listed as the "Administrative Contact" and "Technical Contact" for the www.cigar500.com domain name, and Defendant Monique Masciangelo is listed as the "Registrant" of that domain name and supplied the credit card for the purchase the domain name. Id. The IP Location of "www.cigar500.com" is in Florida. Id. ¶ 9.

Defendants have blatantly infringed on Shanken's *Cigar Aficionado*-related trademarks and copyrighted materials by displaying several infringing uses of those materials on the Cigar500 Website. Id. ¶¶ 22-42.

### Shanken's *Cigar Aficionado* Trademarks and Copyrighted Materials

In April 2007, Shanken published the May/June 2007 issue of *Cigar Aficionado* magazine, volume 15, number 4 (the "Cuba Issue"), which is an original publication of which Shanken owns all right, title, and interest, including all copyrights. Id. ¶ 10. That issue of the magazine is copyrightable subject matter and is the subject of a Certificate of Copyright Registration issued by the Register of Copyrights on May 10, 2007. Id. ¶¶ 10, 16.

The front cover of the Cuba Issue is distinctive in appearance. It bears an artistic rendering of two palm trees against a blue sky, with the caption "CUBA TOMORROW." The front cover of the Cuba Issue also bears as a trademark a stylized rendering of the words "CIGAR AFICIONADO." Id. ¶ 12. Several other federally registered trademarks appear within the Cuba Issue as well. Id. ¶ 17.

Page 128 of the Cuba Issue contains a portion of an article reviewing and rating several Cuban cigars. The *Cigar Aficionado* "Rating" of each cigar is expressed as a number on a scale of 1 to 100. Below each cigar's name and Rating, Shanken includes a brief narrative, or "Tasting Note," describing that particular cigar. Id. ¶ 27.

**Defendants' Infringing Uses of Shanken's**
**_Cigar Aficionado_ Trademarks and Copyrighted Materials**

Cigar500 has, without authorization, infringed Shanken's intellectual property, including its trademark "Cigar Aficionado" and several instances of copyrighted materials contained in the Cuba Issue of _Cigar Aficionado_, by displaying those materials and using those trademarks on the Cigar500 Website.  Id. ¶¶ 22-42

In particular, the first page that appears when a user navigates to www.Cigar500.com (the "Home Page") is headed "_Welcome Cigar Aficionado Readers!_"  Id. ¶ 23.  The Home Page is subdivided into several "frames," and the top frame on the right side of the Home Page contains a photographic image of the front cover of the Cuba Issue of _Cigar Aficionado_, under a paragraph of text that reads: "**ON SALE!  The 6 Cuban Cigars _Cigar Aficionado_ Rated 91 or Better!  Click Here to ORDER NOW!**"  Id. ¶ 24.  When the user "clicks here" as invited, he or she is redirected to a second web page (the "Offer Page") in the www.Cigar500.com domain.  The Offer Page also contains an image of the front cover of the Cuba Issue of Cigar Aficionado magazine.  Id. ¶ 25.

The Offer Page sets forth an offer to sell six Cuban cigars for $89.95, and states "RATED 91 OR BETTER BY _CIGAR_ AFICIONADO. 6 AUTHENTIC CUBAN CIGARS.  The 6 Cubans that _Cigar Aficionado_ calls 'Outstanding' showcase the best that Cuba has to offer."  Id. ¶26.

The Offer Page then sets forth a column listing several Cuban cigars and the _Cigar Aficionado_ "Rating" of each cigar on a scale of 1 to 100.  Below each cigar's name and Rating is a brief narrative describing that particular cigar.  Id. ¶ 27.  The Ratings and the narratives are verbatim renderings of the Ratings and Tasting Notes on page 128 of the Cuban Issue, _viz._:

> RATED 97    **MONTECRISTO NO. 2**
> The classic torpedo that no one can duplicate gives you all the cedar, spice, and tobacco character you can hope for.  Always draws like a dream.

RATED 96 **COHIBA SIGLO VI**
A combination of richness and finesse gives you just the right combination of power and class.  Cool smoke.

RATED 93 **MONTECRISTO EDMUNDO**
This gets better and better with lots of spicy cedar character and a full, rich finish.

RATED 93 **TRINIDAD ROBUSTO EXTRA**
The creamy texture and cedar notes say Cohiba, but the spicy, light earthy and vanilla flavors say Trinidad.

RATED 92 **HOYO DE MONTERREY PETIT ROBUSTO**
The Rich, toasty, and decadent character stimulates each taste bud in an elegant, creamy way.  Quick satisfaction.

RATED 91 **PARTAGAS SERIE D NO. 4**
This is now the biggest-selling Cuban robusto and always delivers plenty of spicy, earthy decadent character.  A classic Habano.

Id. ¶ 27.

The Home Page and the Offer Page printed out from the www.Cigar500.com web site are annexed to the Complaint as Exhibits E and F, respectively, (Raymond Decl., Ex. 1).

Additionally, the Offer Page declares that

> All Cuban cigars advertised on Cigar500.com are guaranteed original Cubans.  Your cigar order will arrive in original factory boxes.  Every box is authenticated and sealed with the original Republic of Cuba "Original National Warranty Seal for Cigars and Cut Tobacco" from the originating factory in Cuba.
>
> **GUARANTEED DELIVERY IN THE USA**

Compl. ¶ 33.

Since 1963, shortly after the Castro revolution in Cuba, it has been a federal crime to import Cuban cigars into the United States under the Trading with the Enemy Act, 12 U.S.C. § 95a.  12 U.S.C.A. § 95a (2006).  Accordingly, Defendants infringed upon Shanken's trademarks and copyrights by using an image of the magazine cover, the Tasting Notes, the name "Cigar Aficionado", and the stylized rendering of the words "Cigar Aficionado" on the Cigar500

- 6 -

Website; Defendants have defamed Shanken by asserting that Shanken encourages violations of

the Trading with the Enemy Act; and Defendants have falsely associated Shaken with their

illegal activities.

## ARGUMENT

### POINT I

### MOTION TO DISMISS STANDARD

A court deciding a motion to dismiss "must accept as true all of the factual allegations set

out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to

plaintiff, and construe the complaint liberally." Scott v. National Ass'n for Stock Car Racing,

Inc., No. 06 Civ. 6029 (DAB), 2008 WL 217049, at *10 (S.D.N.Y. Jan. 17, 2008).

### POINT II

### NEW YORK LAW PROVIDES TWO SEPARATE BASES
### FOR LONG-ARM JURISDICTION OVER ALL THREE DEFENDANTS

When a defendant does not reside in the state in which a federal court is situated, the

federal court may exercise jurisdiction over that non-domiciliary defendant in any manner that is

consistent with the law of that state. Citigroup Inc. v. City Hldg. Co., 97 F. Supp. 2d 549, 564

(S.D.N.Y. 2000). The court must also determine whether the exercise of personal jurisdiction

comports with due process. Id. This standard is particularly low when defendants move to

dismiss based upon a purported lack of personal jurisdiction, because "a plaintiff need only make

a *prima facie* showing that jurisdiction exists." Editorial Musical Latino Americana S.A. v. Mar

Int'l Records, Inc., 829 F.Supp 62, 64 (S.D.N.Y. 1993).

New York law provides two separate, and equally sufficient, bases for the exercise of

"long arm" jurisdiction in this matter over Cigar500, Anthony Masciangelo, and Monique

Masciangelo. Each of the three defendants has "commit[ted] a tortious act without the state

causing injury to person or property within the state" under CPLR 302(a)(3), and each of the

three defendants "transacts . . . business within the state or contracts anywhere to supply goods

or services in the state" under CPLR 302(a)(1).  N.Y. C.P.L.R. 302(a)(3) (2006).

Either CPLR 302(a)(1) or (a)(3), alone, would provide a sufficient basis for the exercise

of long-arm jurisdiction.  Here, each defendant satisfies <u>both</u> subsections.

## A.    The Defendants Have All Committed Tortious Acts Outside of New York Which Have Caused Harm Within New York.

The Defendants are subject to long-arm jurisdiction under CPLR 302(a)(3), which

> confers jurisdiction over a defendant where the cause of action
> arises out of a tort committed outside of New York but the tort
> causes harm within New York, the defendant expected or should
> reasonably have expected the act to have consequences in the state,
> and the defendant derives substantial revenue from interstate or
> international commerce.

<u>Citigroup</u>, 97 F. Supp. at 568 (S.D.N.Y. 2000).

The facts alleged in the Complaint leave no doubt that Cigar500, Anthony Masciangelo,

and Monique Masciangelo have committed trademark and copyright infringement— which

constitute tortious acts under CPLR 302(a)(3), <u>see, e.g.,</u> <u>Citigroup</u>, 97 F. Supp. 2d at 568 —

through their registration, administration, maintenance and operation of the Cigar500 Website.

The Cigar500 Website's Home Page is headed "*Welcome Cigar Aficionado Readers!*"  Both the

Home Page and the Offer Page set forth color photographs of the front cover of the Cuba Issue of

*Cigar Aficionado* magazine.  The Offer Page blatantly states that the six cigars listed were

"RATED 91 OR BETTER BY CIGAR AFICIONADO," and then goes on to list, verbatim, the

"Tasting Notes" printed on page 128 of the Cuba Issue.

Second, an allegation that "potential customers in New York are confused or deceived

when they view and interact with the [allegedly infringing] web sites" is, standing alone, a

sufficient allegation of harm. <u>Citigroup</u>, 97 F. Supp. 2d at 568. The Complaint contains several allegations that point out the various ways in which Defendants' infringing conduct has caused marketplace confusion or deception. <u>See</u> Compl. ¶¶ 22, 32, 37, 61, 68. The Defendants have confirmed that harm occurred in New York by acknowledging in the Anthony Masciangelo Declaration (¶ 22) that New York customers have provided them $19,500 in revenue since 2006.

Third, as a matter of law, it is "reasonably foreseeable that publication of web sites with . . . offending marks would have consequences in New York." <u>Citigroup</u>, 97 F. Supp. 2d at 568; <u>see also Am. Network, Inc. v. Access Am./Connect Atlanta</u>, 975 F.Supp. 494, 497 (S.D.N.Y. 1997). Moreover, Shanken is located in New York, and the Cigar500 Website offers **"GUARANTEED DELIVERY IN THE USA,"** of its Cuban cigars, which is an unabashed attempt to target consumers in the United States, including New York.

Fourth, three Canadian Defendants cannot credibly deny that they "derive[] substantial revenue from international commerce" when the allegations of the Complaint make clear that the Cigar500 Website (i) greets its users with the banner headline "Welcome Cigar Aficionado Readers," which refers to an American publication; and (ii) advertises goods for "GUARANTEED DELIVERY IN THE USA." Furthermore, Defendants have confirmed that Cigar500 derives substantial revenue from New York. Indeed, Defendants have taken in $19,500—or nearly 10% of $260,000 in total revenues that Defendants have earned since June 2006—from New York customers. Anthony Masciangelo Decl. ¶¶ 22, 23.

The Defendants therefore meet all four criteria for long-arm jurisdiction under CPLR 302(a)(3). This Court has consistently exercised personal jurisdiction over the non-resident operators of infringing websites on facts less compelling than these. <u>See, e.g.</u>, <u>Citigroup</u>, 97 F. Supp. 2d 549; <u>Am. Network, Inc.</u>, 975 F. Supp at 498 (finding jurisdiction over proprietor of

allegedly infringing, and non-interactive, website based upon, inter alia, website's statement that defendant sells "across the U.S."). The same result regarding jurisdiction should be reached here.

**B.    Defendants Are "Doing Business In New York" Not Only Through The Cigar500 Website, But Also Through Sales And Advertising.**

Under CPLR section 302(a)(1), long-arm jurisdiction extends to defendants who have transacted business in New York if the claim arises out of that transaction. N.Y. C.P.L.R. 302(a)(1) (2006). The determination of whether a defendant "transacts business" in New York depends upon "the totality of the circumstances concerning the party's interactions with, and activities within, the state." Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999).

The allegations in the Complaint supply ample basis for a determination that Defendants transact business in New York. First, operation of the Cigar500 Website is, by itself, conclusive proof that the Defendants transact business in New York. This Court has consistently held that if a defendant operates an interactive website—which "permit[s] the exchange of information between the defendant and website viewers"—is generally "doing business" in New York. Hsin Ten Enter. USA Inc. v. Clark Enters., 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000).

The Cigar500 Website is unquestionably "interactive." The Home Page permits users to (i) "Log In" to a personal account which they can create and protect with a password; (ii) place orders online and "Checkout" online; (iii) "Request a Catalog"; and (iv) contact "Customer Service" by an automatically-prompted email. See Compl. Ex. E. Thus, the Cigar500 Website is not only "interactive," but are also "significant and unqualifiedly commercial in nature," meaning that Cigar500 is "doing business" in New York. Citigroup, 97 F. Supp. 2d at 565 (finding jurisdictional basis solely from operation of a website that permitted users to "apply for

loans on-line . . . click on a 'hyper-link' to 'chat' online with a City Lending representative, and . . . email" questions); see also Hsin Ten, 138 F. Supp. 2d at 456 (finding that website operator was "doing business" where website permitted user to "purchase . . . online, download an order form, download an application to become an 'independent affiliate,' and ask questions of an online representative"); Obabueki v. I.B.M. Corp., Nos. 99 Civ. 11262(AGS), 99 Civ. 12486(AGS), 2001 WL 921172, at *4 (S.D.N.Y. 2001) ("given that the interactivity of the Choicepoint, Inc. website is significant and clearly commercial in nature, the Court finds that it rises to the level of transacting business required to confer jurisdiction under Section 302(a)(1)").

Moreover, because the allegations of the Complaint state that the infringing uses of Shanken's trademarks and copyrighted materials appeared on the Cigar500 Website, the claims in this action arise directly out of Defendants' New York transactions. See Hsin Ten, 138 F. Supp. 2d at 456 ("the trademark infringement claim arises out of Clark's use of the 'Chi' trademark on the Websites. Accordingly, jurisdiction under section 302(a)(1) is appropriate.").

Although the Defendants' operation of the Cigar500 Website alone would support long-arm jurisdiction, Defendants also maintain other contacts with New York that confirm the propriety of exercising long-arm jurisdiction over each of them. Defendants have admitted that Cigar500 has derived almost 10% of its overall revenue from sales in New York since June 2006. (Anthony Masciangelo Decl. ¶¶ 22, 23). Defendants have also acknowledged that Cigar500 has contracted with New York-based Shanken for the publication of advertisements. Id. ¶ 17. Thus, even without the interactive website, Defendants have demonstrated a consistent pattern of "doing business" in New York and are therefore subject to long-arm statute jurisdiction under CPLR 302(a)(1). Cf. Fashion Fragrance & Cosmetics v. Croddick, No. 02 CV

6294(WK), 2003 WL 342273, at *6 (S.D.N.Y. 2003) (finding jurisdiction based upon interactive website, "a number of" New York customers, and one appearance in a New York trade show).

Defendants attempt to avoid the jurisdictional reach of this Court by directing the Court to cases involving *non*-interactive websites, which were held to be an insufficient basis for long-arm jurisdiction.  See Def. Mem. at 10-11, citing Rosenberg v. PK Graphics, No. 03-Civ 6655, 2004 U.S. Dist. LEXIS 8266, at * 4-5 (S.D.N.Y. 2004) (holding that website "does not reach a level of interactivity amounting to doing business because it 'does not even allow visitors to complete a purchase by paying online. . . .  some further contact must be made'"); Girl Scouts of U.S. v. Steir, 102 Fed. Appx. 217 (2d Cir. 2004) (finding no long-arm jurisdiction based upon website that merely functioned as one-way medium for political speech).  Those cases are inapposite because the Cigar500 Website is highly interactive.

Nor does Seldon v. Direct Response Techs., No. 03 Civ. 5344, 2004 U.S. Dist. LEXIS 5344 (S.D.N.Y. 2004), provide Defendants any basis to avoid long-arm jurisdiction.  There, the plaintiff urged long-arm jurisdiction based upon the alleged tort of defamation, but, as Judge Scheindlin ruled, "neither section 302(a)(2)or 302(a)(3) may be invoked to support jurisdiction in defamation actions,"  Id. at *18.  Although the instant Complaint does contain a cause of action for defamation (Fifth Claim), Shanken's dual bases for asserting long-arm jurisdiction are (i) doing business in New York and (ii) the tortious acts of trademark and copyright infringement, which, unlike defamation, are sufficient under CPLR 302(a)(1) and (3).

Finally, Defendants cite an Eastern District of New York case, ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81 (E.D.N.Y. 2006), which holds that an interactive website is not sufficient to confer long arm jurisdiction, and requires proof of further contacts with New York.  That case would be of no moment even if it were binding on this Court (which it is not), because

further contacts are present here: Defendants have admitted that nearly 10% of their revenue

came from New York, and that they contracted with New York-based Shanken for advertising.[3]

**C.    Because New York Denies Corporate Employees The
        Protections Of The Fiduciary Shield, Long-Arm Jurisdiction
        Extends To Anthony and Monique Masciangelo Personally.**

Under New York law, long-arm "[j]urisdiction extends to the employees of a corporation

who had knowledge of, and exercised control over, the New York transaction that is the source

of the litigation." Alpha Int'l, Inc. v. T-Reprods., Inc., No. 02-Civ.-9586 (SAS), 2003 WL

21511957, at *3 (S.D.N.Y. 2003). This is so because "the fiduciary shield rule is not available to

defeat jurisdiction under the New York long-arm statute." Kreutter v. McFadden Oil Corp., 71

N.Y.2d 460, 472, 522 N.E.2d 40 (N.Y. 1988); Editorial Musical Latino Americana, 829 F.Supp.

at 66 ("this Court has interpreted Calder [v. Jones] as completely rejecting the fiduciary shield

doctrine.") (citation omitted).

In theory, the fiduciary shield doctrine shields a corporate employee from the exercise of

personal jurisdiction over him if he acted solely in a corporate capacity with respect to the forum

state. See CPC Int'l, Inc. v. McKesson Corp., 70 N.Y.2d 268, 287-88, 519 N.Y.S.2d 804, 814,

514 N.E.2d 116 (N.Y. 1987). However, New York rejects that approach and holds that the

"fiduciary shield" doctrine does not apply to any "provision of the long-arm statute." See

Kreutter, 71 N.Y.2d at 468; Pilates, Inc. v. Pilates Inst., Inc., 891 F.Supp. 175, 181 (S.D.N.Y.

1995) (exercising long-arm jurisdiction over corporate employee under CPLR 302(a)(3) due to

the role he "played in targeting New York for the allegedly infringing goods and services");

---

[3]    In the event that the Court determines that the factual allegations of the Complaint as presently constituted
       do not provide a basis for a determination that the Defendants are subject to personal jurisdiction, Plaintiff
       respectfully submits that leave to re-plead should be granted, as any omissions would be easily curable
       given the additional jurisdictional facts that are now matters of record.

Kossoff v. Samsung Co., 123 Misc.2d 177, 184, 474 N.Y.S.2d 180, 186 (Sup. Ct. N.Y. Co.

1984) (exercising long-arm jurisdiction over persons whose conduct on behalf of corporation

"constitutes engagement in a 'persistent course of conduct' within this jurisdiction and the ambit

of the laws of this State (C.P.L.R. 302(a)(3)(i))).")

 Thus, this Court has held that under New York law, "a corporate president who has a

financial interest in the company and the ability to supervise or control an infringing activity will

be held personally liable" for the infringement.  Editorial Musical Latino Americana, 829

F.Supp. at 66 (emphasis added) (denying corporate president's motion to dismiss for lack of

personal jurisdiction: Court had jurisdiction "over not only [the corporate defendant], but also

over Perez as its corporate officer."); see also Pilates, Inc., 891 F. Supp. at 181 (holding that a

corporate employee who is "a conscious, dominant and active force behind the wrongful acts" of

trademark infringement is subject to long arm jurisdiction).

 Anthony and Monique Masciangelo cannot escape liability for their personal involvement

in the trademark and copyright infringements by claiming that they were acting on behalf of the

Cigar500 corporate shell.  The Complaint alleges that Anthony Masciangelo is a principal of

Cigar500, the Administrative Contact for the infringing Cigar500 Website, and its Technical

Contact.  Compl. ¶ 7.  He admits that he is a 51% shareholder in Cigar500.  Anthony

Masciangelo Decl. ¶ 9.  It is undisputed that he has a financial interest in the company.  Thus he

"clearly knew of and exerted control over the New York transactions upon which" Shanken has

brought this lawsuit, and is therefore not protected from this Court's jurisdictional reach by the

corporate shell of Cigar500.

 Similarly, the Complaint alleges that Monique Masciangelo is also a principal of

Cigar500 and, as Registrant of the Cigar500 Website, acted as an agent of the Company in

procuring the domain name. Compl. ¶ 8. Monique Masciangelo denies being a principal in

paragraph 5 of her Declaration, but acknowledges acting as an agent by allowing use of her

credit card. Her complicity is therefore an issue of fact. Thus, taking the allegations of the

Complaint as true, she, too was in a position to exercise control over the Cigar500 Website's

infringing content. Both individual defendants are therefore asubject to personal jurisdiction to

the same extent as the corporation they control and operate the website on behalf of, Cigar500.

**D.      The Exercise of Jurisdiction Over The Defendants Comports with Due Process**

Given the strength of the cases cited above in which this Court has determined that

defendants with less-interactive websites and fewer contacts with New York have been found

subject to personal jurisdiction in this Court, there is no credible argument that subjecting the

Defendants to jurisdiction here would violate due process. See, e.g., Citigroup, 97 F. Supp. 2d at

569. Due process requires only that a defendant have "certain minimum contacts with [the

forum] such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation and

internal quotation marks omitted). Here, the defendants target U.S. and New York consumers

for their products with guarantees of delivery and a highly-interactive website. Defendants have

contracted with a New York corporation and have derived nearly 10% of their revenues from

New York. Those contacts constitute a more than sufficient basis upon which to conclude that

Defendants reasonably ought to expect to be haled into a New York court.

<u>POINT III</u>

## PLAINTIFF HAS INDISPUTABLY STATED COPYRIGHT AND TRADEMARK CLAIMS AND DEFENDANTS CANNOT ESTABLISH THAT THEIR USE WAS FAIR AS A MATTER OF LAW

Although Defendants have moved to dismiss Plaintiff's First Claim (copyright infringement), Second Claim (Lanham Act trademark infringement), Third Claim (Lanham Act unfair competition) and Fourth Claim (Lanham Act dilution), they do not dispute that Plaintiff has adequately pled its claims. They instead argue that this Court should dismiss those claims upon a finding that Defendants have, on no factual record whatsoever, met their burden of establishing the affirmative defenses of fair use. In both the copyright and trademark contexts, "fair use" is a highly fact specific inquiry that is particularly unsuited to a 12(b)(6) motion. Plaintiff is aware of no cases in this circuit that have granted such motions. Moreover, with respect to both the trademark and copyright claims, the Defendants' analysis is legally flawed. Accordingly, the Defendants' motion must be denied.

**A.    <u>Defendants' Motion To Dismiss Plaintiff's Copyright Claim Must Be Denied Because Defendants' Use of Plaintiff's Marks Is Not A Fair Use</u>**

    **(i)    The Affirmative Defense of Fair Use Is Fact-Specific And Therefore An Inappropriate Argument In A Motion To Dismiss**

"Fair use [in the copyright context] is a mixed question of law and fact," <u>Harper & Row Publishers v. Nation Enters.</u>, 471 U.S. 539, 560 (1985), and always calls for case-by-case analysis. <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 US 569, 577 (1994). Courts are reluctant to decide cases on fair use grounds even at the summary judgment stage, although they will do so when no material issue of fact remains after discovery. <u>Wright v. Warner Books, Inc.</u>, 953 F.2d 731, 735 (2d Cir. 1991) ("[t]he fact-driven nature of the fair use determination suggests that a district court should be cautious in granting Rule 56 motions in this area . . ."). No case in this

circuit has granted a motion to dismiss a copyright infringement claim on fair use grounds,[4] likely because the fact-specific analysis is inappropriate for a Rule 12(b)(6) motion.

**(ii)    Defendants' Use of the Copyrighted Works Is Not A Fair Use**

Section 107 of the Copyright Act permits the unauthorized use or reproduction of copyrighted work if it is "for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research." 17 U.S.C.A. § 107 (2006). Whether such "fair use" exists involves a case-by-case determination using four non-exclusive factors: (1) "the purpose and character of the use;" (2) "the nature of the copyrighted work;" (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole;" and (4) "the effect of the use upon the potential market for or value of the copyrighted work." Id.

*The Purpose and Character of the Use Weighs In Favor of Plaintiff.* The lynchpin of Defendants' argument is that that their uses of both the cover and the Tasting Notes are fair uses because they are transformative. The legal standard for transformativeness in the Second Circuit is: "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or character, altering the first with new expression, meaning or message." Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006) (citing Campbell, 510 U.S. at 579) (internal quotations omitted). If "the secondary use adds value to the original - [the copyrightable expression in the original work] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings – this is the very activity that the fair use doctrine intends to protect for the enrichment of society." Id. at 251-252 (quoting Castle Rock Entm't v. Carol Publ'g Group, Inc., 150 F.3d 132, 142 (2d Cir. 1998) and

---

4    Defendants cite only one case, an unpublished opinion from the Ninth Circuit affirming the dismissal of a copyright claim for failure to state a claim. Def. Mem. at 19, citing Turner v. McMurty, No. 00-55777, 200 U.S. App. LEXIS 33646, at *3 (9th Cir. Dec. 4, 2000). Turner has nothing to do with the affirmative defense of fair use.

Pierre N. Leval, *Toward A Fair Use Standard,* 103 Harv. L. Rev. 1105, 1111 (1990)). Defendants' use of Plaintiff's copyrighted works does nothing of the kind.

The Tasting Notes are the creative expression of experts in the field writing about their impressions of particular cigars in order to inform *Cigar Aficionado* readers about those cigars.[5] Compl. ¶¶ 5, 15. Defendants' are using the Tasting Notes to "free ride" off of the authoritative opinions written by *Cigar Aficionado's* experts to help inform Defendants' customers about the cigars that Defendants offer for sale. Def. Mem. at 17. The cover has perhaps a mixed purpose of artistic expression and promotion, to designate and decorate the Cuba Issue. See Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 609 (2d Cir. 2006) (concert posters found to have mixed purpose of artistic expression and promotion). Defendants' use of the cover is the same as Plaintiff's: to designate *Cigar Aficionado* and to create the (false) impression that *Cigar Aficionado* promotes the Cigar500 Website. The Defendants have done no more than repackage Plaintiff's content in their own context. Adding nothing of aesthetic value and creating nothing new, they have not transformed the copyrighted works. See Castle Rock, 150 F.3d at 142 (trivia book about television show not transformative, it merely repackaged television show to entertain show's viewers); Nihon Kezai Shimbun v. Comline Bus. Data, Inc., 166 F.3d 65, 72 (2d Cir. 1999) (abstracts of copyrighted news articles not transformative).

Defendants rely on two Ninth Circuit cases, neither of which is controlling or on point. Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003), held that thumbnail copies of plaintiff's images were transformative because they were a necessary and integral part of an important

---

5    In straining to craft a difference in purpose, Defendants brazenly pronounce that "Cigar Aficionado's cover art and tasting notes were presumably created to sell magazines." See Def. Mem. at 17. Not only is the "presumption" of Defendants' counsel as argued in its brief no substitute for a factual record (not to mention wrong), but that statement also highlights the absence of the necessary factual record to reach a determination about whether Defendants' use of plaintiff's copyrighted works is transformative, let alone fair.

technological innovation that served the public benefit; the first internet image search engine. But here, Defendants' use of Plaintiff's copyrighted works serves no public benefit and does not further technological innovation. Defendants' reliance on Sony Computer Entm't Am., Inc. v. Bleem, LLC, 214 F.3d 1022, 1029 (9th Cir. 2000) is even more puzzling, because that comparative advertising case involves the policy of permitting a seller to copy a competitor's products to make truthful claims about the competitor. However, Shanken is not Cigar500's competitor.

Defendants further argue that their admitted commercialism does not end the inquiry, for if the use is transformative, other factors, including commercialism, are of less significance. Def. Mem. at 17. The Second Circuit has held that the commercial exploitation of a transformative work, such as the sale of a work of art or of an historical biography, will not negate a finding that those works may contain a fair use since "many, if not most, secondary users seek at least some measure of commercial gain from their use . . ." Am. Geophysical Union v. Texaco, Inc., 60 F.3d 913, 921 (2d Cir. 1995). Plaintiff is aware of no case in this Circuit that holds that the first factor weighs in favor of the Defendant in connection with a purely commercial use like Cigar500's use. Thus, the first factor weighs in favor of Shanken.

*The Nature of the Copyrighted Work Weighs in Favor of Plaintiff.* With respect to the second factor, the copyrighted works are clearly published, but also clearly creative. The Tasting Notes are expert opinions about particular cigars and are no more "unprotected facts" than are reviews in the New York Times Book Review. If they were, than there would be no need to copy *Cigar Aficionado's* expert opinions. The cover is a creative combination of stylistic art and graphic design. To the extent there is any informational (or "factual") content, it is to denote the source, *Cigar Aficionado.* Plaintiff concedes that in copying the entire cover of the Cuba Issue,

Defendants have copied the informational aspect of indicating source as well as the creative elements. See infra Subsection B.

*The Amount and Substantiality of the Portion Used Was Unreasonable.* The third factor also weighs in favor of Plaintiff because the copyrighted works are copied verbatim, in their entirety. The cover is a stand-alone work, a combination of artistic expression and graphic design. It is used by Defendants solely (albeit falsely) as an indicator of source. Defendants could have accomplished their stated (dubious) goal of informing customers about cigars for sale on the Cigar500 web site without also copying the cover of the magazine in its entirety.

The Tasting Notes are also copied verbatim, in their entirety. The material copied appears in the original in a "pull out" box as an abstract of the larger article. See Compl. Ex. E. It is a complete and discrete component of the article, a unitary whole. To the extent it is to be viewed as just a part of the larger article, it is surely the "heart" of it, as it summarizes and encapsulates the most salient points made about the cigars at issue. See Harper & Row, 471 U.S. 539 (copying the "heart" of the copyrighted work, even if only a small percentage of the overall work, weighs against a finding of fair use). It is, however, plainly wrong to suggest that the portion used is only an insignificant portion of the magazine as a whole. See Am. Geophysical, 60 F.3d at 926 (each of several articles separately authored but appearing in one journal constitutes a discrete work of authorship for copyright protection and a fair use analysis).

*Cigar500's Use Will Adversely Impact the Market for the Copyrighted Works.* Finally, the fourth factor also weighs in favor of Plaintiff. The Court must consider not only the market harm caused by the "particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant … would result in a substantially adverse impact on the potential market for the original." Castle Rock, 150 F.3d at 145 (quoting

Campbell, 510 U.S. at 590). Customers purchase *Cigar Aficionado* magazine because it is a leading authority on cigars and because they seek expert opinion on the topic. See Compl. ¶¶ 5, 15. If those materials can be found online for free, the paying market for the magazine would be suppressed or destroyed. Furthermore, Defendants do not even address the existence of other markets, such as that for licensing or permissioning reprints, which are obviously suppressed or destroyed by the conduct of the Defendants. In any event, a proper analysis of market harm cannot possibly be done without any factual record of market harm.

Defendants' motion should be denied because it is plainly inappropriate to evaluate whether the infringement of a copyrighted work is fair use purely as a matter of law. However, to the extent the Court were to engage in the analysis, each of the four factors weigh against Defendants, and the Motion should be denied on the merits.

**B.     Defendants' Motion To Dismiss Plaintiff's Trademark Claims Must Be Denied Because Defendants' Use of Plaintiff's Marks Is Not A Fair Use**

Defendants do not dispute that Plaintiff has properly alleged its claims under the Lanham Act in its Second (trademark infringement under 15 U.S.C. §1114), Third (unfair competition under 15 U.S.C. §1125(a)) and Fourth (dilution under 15 U.S.C. §1125(c)) Claims of the Complaint.6 Instead, Defendants' motion to dismiss is based on the affirmative defenses of traditional "fair use" and "nominative fair use," which are fact-specific and unsuited to a 12(b)(6) motion. See Chambers v. Time Warner, Inc., 282 F.3d 147 (2d. Cir. 2002) (reversing dismissal on Lanham Act claims); EMI Catalogue P'ship v. Hill, Holliday, Connors,

---

6       Defendants do not dispute that Plaintiff has adequately pled its claim for dilution under the Lanham Act. They claim only that because there is no false sponsorship, there cannot be a dilution claim. Def. Mem. at 24, n.5. Defendants' motion must be denied because nothing refutes the allegations in the Complaint of false sponsorship and it cannot be determined as a matter of law that no rational jury could find that Plaintiff's mark would suffer negative associations through Defendants' use.

Cosmopulos Inc., 228 F.3d 56, 68 (reversing summary judgment on Lanham Act claim because issue of good faith implicated and intent "best left in the hands of the trier of fact"). Defendants cite only one case decided on 12(b)(6) grounds, and that case had nothing to do with a fair use defense. Le Book Pub., Inc. v. Black Book Photog., Inc., 418 F. Supp. 2d 305 (S.D.N.Y. 2005).

### (i)    Cigar500's Use Was Not A "Fair Use"

The principles that a non-deceptive, good faith, truthful use of a trademark may be permitted is codified in the Lanham Act, which provides that fair use may be established where "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, ... which is descriptive of and used fairly and in good faith, only to describe the goods or services of ... [a] party or their geographic origin." 15 U.S.C.A. §1115(b)(4) (2006). However, the "truthful" fair use defense refers to a situation where the defendant is using the mark to describe its own goods, i.e., where plaintiff's trademark is a descriptive word that a defendant is using in its plain English meaning. See Car-Freshner v. S.C. Johnson & Son, Inc., 70 F.3d 267, 269 (2d. Cir. 1995) (defendant's use of a pine-tree shaped air-freshener found fair despite plaintiff's prior use of a tree shaped air-freshener because pine tree shape is descriptive of the pine scent that defendant's product emits and of the Christmas season in which product sold); Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30-31 (2d Cir. 1997) (defendant's use of phrase "seal it with a kiss" inviting customers to make a lip print on postcards in connection with a promotion for its lipsticks found fair despite plaintiff's trademark for lip gloss "Sealed with a kiss" because defendant's use of phrase was common English usage, not use in the trademark sense). This "fair use" defense does not apply to the circumstances here at issue where the Plaintiff's marks are being used precisely *in their trademark sense* as a source indicator to refer to Plaintiff's product.

Defendants cite to <u>Cuisinarts, Inc., v. Robot-Coupe Int'l Corp.</u>, 509 F.Supp. 1036, 1042 (S.D.N.Y. 1981), for the proposition that "collateral and truthful references to the trademark of another are permissible as long as the unauthorized use reference does not cause confusion." The <u>Cuisinarts</u> court, however, found that defendants' use of plaintiff's mark, while not *untrue, did in fact cause confusion* in its use of plaintiff's trademarked name and was not fair. <u>Id</u>. At 1044. Although Robot-Coupe (truthfully) advertised that its food processor was the same as a product once distributed under the Cuisinarts name, the court found that customers were still likely to be confused as to the current relationship between Cuisinarts and Robot-Coupe. <u>Id</u>. This was true despite a clarifying footnote that explained the relationship:

> The small-type footnote designated by the asterisk, while factually accurate, is insufficient to cure the several misleading impressions which arise out of the prominent headline. It is unreasonable to assume that all prospective purchasers, their imagination caught by the catchy headline, would take time to ponder the commercial realities of the tiny footnote.

<u>Id</u>. Even though Defendants' uses of the Cigar Aficionado mark are literally true, the use is not at all "fair." The appearance of sponsorship is apparent and that appearance, which is immediately created on the Home Page where the greeting *"Welcome Cigar Aficionado Readers!"* is the first thing the user sees, could not be dispelled by any truthful disclaimers or qualifiers should they even appear elsewhere on the site (which they do not).

**(ii)    Cigar500's Use Was Not A Nominative Fair Use**

The elements of the nominative fair use defense as first enunciated by the Ninth Circuit in <u>New Kids on the Block v. News Am. Publ'g</u>, 971 F.2d 302 (9th Cir. 1992) are that (1) the product is not readily identifiable without the mark; (2) defendants have used only as much of the mark as is necessary to refer to the plaintiff's product, and (3) the use does not falsely imply sponsorship or endorsement by the plaintiff. <u>New Kids</u>, 971 F.2d at 308.

- 23 -

With respect to the first and second elements taken together, it is assumed for purposes of this motion that it is not possible to refer to *Cigar Aficionado* magazine without using the *words* "Cigar Aficionado." However, Plaintiff has registered marks in the words *Cigar Aficionado* taken alone in type style, as well as in certain fonts and logos. Compl. Exs. B-D. The use of fonts and logos has been found "more than reasonable" by the courts. New Kids, 971 F.2d at 308; Playboy Enters., Inc., v. Welles, 279 F.3d 796, 803 (9th Cir. 2002). Defendants have used Plaintiff's marks in both ways. See Compl. Exs. E, F. Shockingly, Defendants claim not to have used Plaintiff's logo and font. See Def. Mem. p. 23. It is reversible error not to consider all infringing uses alleged in the complaint. Chambers, 282 F.3d at 156.

But even more central to the failure of Defendants' nominative fair use defense is Defendants' failure to meet the third element: that there must be no implication of sponsorship or endorsement by the plaintiff of Defendant's product. New Kids, 971 F.2d at 308. The repeated use of the entire cover strongly suggests *Cigar Aficionado's* imprimatur and endorsement. Further, the use of the salutation "Welcome Cigar Aficionado Readers!" on the Home Page also strongly suggests improper endorsement insofar as it forms the customer's first impression upon visiting the Cigar500 Website, a first impression that is not easily dispelled. See Cuisinarts, 509 F.Supp. at 1044. The salutation is also improper because it connects *Cigar Aficionado* to more than just the cigar ratings taken from the magazine which are copied on the Offer Page. It connects the name and good will of *Cigar Aficionado* magazine to the entire site; it is one of the first items seen by visitors to the site whether they navigate directly to the Home Page or through the Home Page to other pages of the site that also have nothing to do with *Cigar Aficionado*. Courts have found an improper motive to trade on the goodwill of the plaintiff where defendant's use of the mark ties it to more than what it legitimately describes. Chambers, 282 F.3d at 156

(reversible error not to consider that plaintiffs' names and likenesses were used in connection with MP3 format files other than those involving plaintiff's works); Jones v. Ground Zero Entertainment, No. 05 Civ. 6461(JSR), 2006 WL 1788949 (S.D.N.Y. June 28, 2006) (granting preliminary injunction against defendants' use of the name and likeness of L'il Kim on the packaging and on marketing material for a documentary of a rap group of which L'il Kim was once a member).

Defendants' motion should be denied because "fair use" and "nominative fair use" are so fact specific and cannot be decided as a matter of law. However, even if the Court were to perform the analysis, Defendants' motion should be denied because Defendants have not met their burden of proving that their use was either fair use or nominative fair use.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss should be denied and the Court should grant Plaintiff such other and further relief as it deems just, proper, and equitable.

Dated: New York, New York
      February 22, 2007

REED SMITH LLP

By: _____
      Peter D. Raymond (PR 3029)
      Emily Kirsch (EB 4216)
      Wallace B. Neel (WN 0038)
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*M. Shanken Communications, Inc.*

- 25 -