UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

M.SHANKEN COMMUNICATIONS, INC.,

                    Plaintiff,

        - against -                         07 Civ. 7371 (JGK)

CIGAR500.COM, et al.,                       OPINION
                                            AND ORDER
                    Defendants.

_____

JOHN G. KOELTL, District Judge:

    The plaintiff, M. Shanken Communications, Inc., brings this
action against Cigar500.com, Inc. ("Cigar500" or "the Company"),
Anthony Masciangelo, and Monique Masciangelo (collectively, "the
defendants") for copyright infringement under 17 U.S.C. § 501,
et seq. (the "Copyright Act").  The plaintiff also asserts
claims of trademark infringement, unfair competition, and
trademark dilution under 15 U.S.C. §§ 1114, 1116, 1125(a) &
1125(c)(collectively, the "Lanham Act claims"), and defamation.
The plaintiff alleges that the defendants infringed upon the
plaintiff's trademarks and copyrights pertaining to the magazine
*Cigar Aficionado,* through their operation of an online retailing
website.  The plaintiff seeks to recover damages and to enjoin
the defendants from further infringing or otherwise violating
the plaintiff's rights in its protected marks and material.

The defendants move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. They also move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiff has failed to state claims upon which relief can be granted.

I.

Unless otherwise stated, the following facts are accepted as true for the purposes of these motions.

The plaintiff is a New York corporation with its principal place of business in the Southern District of New York. (Compl. ¶ 5.) The plaintiff is in the magazine-publishing business, and has published several magazines, including *Cigar Aficionado*, a source of information for cigar smokers, in which it owns several trademarks and copyrights. (Id.)

Cigar500 is a Canadian corporation with its principal place of business in Woodbridge, Ontario, Canada which operates an Internet website at www.cigar500.com. (Id. ¶ 6.) Cigar500.com is an online source of cigars, including Cuban cigars, as well as related products. (Id.; Declaration of Anthony Masciangelo, Jan. 10, 2008 ("AM Decl.") ¶ 9.) The defendants assert that Cigar500 does not have an office, bank account, or other property in New York, maintain a phone listing in New York, have

agents or employees located in New York, or specifically target New York residents in its advertising or public relations.  (AM Decl. ¶ 11.)  Cigar500 does business internationally and the website specifically guarantees delivery of authentic Cuban cigars to residents in the United States.  (Compl. ¶ 33.)

Mr. Masciangelo is a principal of Cigar500 and resides and works in Canada.  (Compl. ¶ 7.)  Mr. Masciangelo founded Cigar500 in February 2006 and is currently a 51% shareholder in the Company.  (AM Decl. ¶¶ 3, 9.)  He is also listed as the "Administrative Contact" and "Technical Contact" for the Cigar500.com domain name.  (Compl. ¶ 2.)

Ms. Masciangelo resides in Canada and is listed as the registrant for the Cigar500.com domain name.  (Compl. ¶ 8.)  The plaintiff also alleges that. Ms. Masciangelo is a principal of Cigar500.  (Id.)  However, in her responsive affidavit, Ms. Masciangelo asserts that she is not a principal, shareholder, or employee of Cigar500.com.  (Declaration of Monique Masciangelo, Jan. 11, 2008 ("MM Decl.") ¶ 2.)  Ms. Masciangelo confirms that in January 2006 her credit card was used to secure the registration of the domain name Cigar500.com.  (Id. ¶ 4.)

In the spring of 2007, Mr. Masciangelo engaged in several telephone discussions with the plaintiff, on behalf of Cigar500, regarding placing advertisements in *Cigar Aficionado*.  (AM Decl. ¶ 17.)  Following these conversations, Cigar500 entered into a

written contract with the plaintiff for the placement of nine
advertisements in *Cigar Aficionado* during 2007 and 2008.  (Id.)
Cigar500's first advertisement ran in the July/August 2007
edition of *Cigar Aficionado*.  (Id. ¶ 19.)

The alleged copyright and trademark violations relate to
the defendants' use of the "Cigar Aficionado" mark, as well as
portions of the May/June 2007 issue of *Cigar Aficionado*
(collectively, the "Work") on their website.  (Compl. ¶ 10.)[1]
The front cover of the Work bears an artistic rendering of two
palm trees against a blue sky, with the caption "Cuba Tomorrow"
and, as a trademark, a stylized version of the words "Cigar
Aficionado."  (Id. ¶ 12.)  Page 128 of the Work lists several
Cuban cigars alongside a *Cigar Aficionado* "rating" of each cigar
on a scale of 1-100 and a brief narrative or "tasting note"
describing the particular cigar.  (Id. ¶ 13.)

In July 2007, Cigar500 launched a promotion on its website
in which it prominently displayed the Work and the "Cigar
Aficionado" marks.  (Id. ¶ 22, Exs. E, F.)  The Cigar500.com
homepage is divided into several "frames."  (Id. ¶ 24.)  On the
top left of the homepage, the frame is headed with a salutation
saying "Welcome *Cigar Aficionado* Readers!" (Compl. Ex. E.)  The
top frame on the right side of the homepage contains a

---

[1] For the purposes of this motion the defendants do not dispute the validity
of the plaintiff's copyright

photographic image of the cover of the Work, under the words "ON SALE! The 6 Cuban Cigars *Cigar Aficionado* Rated 91 or Better! Click Here to ORDER NOW!" (Id. ¶¶ 11-12, Exs. E, F.) If the user clicks on the "Order Now" text they are brought to a web page that contains another image of the Work. At the top of this page is a heading, which states: "RATED 91 OR BETTER BY *CIGAR AFICIONADO*. 6 AUTHENTIC CUBAN CIGARS. The 6 Cubans that *Cigar Aficionado* calls 'Outstanding' showcase the best that Cuba has to offer." (Id. ¶¶ 25-27, Ex. F.) Beneath this heading is an image of six cigars, alongside verbatim copies of the "ratings" and "tasting notes" from page 128 of the Work, complete with prices and a link to purchase the cigars in question. (Id.) The plaintiff commenced this action on August 17, 2007.

The plaintiff has alleged five causes of action against the defendants, including a claim for copyright infringement based on the defendants' use of the Work on their website (Compl. ¶¶ 44-55.); trademark infringement and unfair competition under the Lanham Act based on the defendants' use of the plaintiffs' "Cigar Aficionado" marks (Compl. ¶¶ 56-73.); trademark dilution (Compl. ¶¶ 74-80.); and defamation (Compl. ¶¶ 81-90.)

II.

A.

The defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2).

A district court has "broad discretion" in deciding a motion to dismiss pursuant to Rule 12(b)(2), including the discretion to conduct an evidentiary hearing if the Court believes one is warranted.  See CutCo Indus. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986); see also Clarendon Nat'l Ins. Co. v. Lan, 152 F. Supp. 2d 506, 515 (S.D.N.Y. 2001).  To survive a motion to dismiss where no evidentiary hearing is held, the plaintiff need only make a prima facie case that the defendant is subject to the Court's personal jurisdiction.  See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); Rubinbaum LLP v. Related Corporate Partners V, L.P., 154 F. Supp. 2d 481, 486 (S.D.N.Y. 2001).  However, the Court may rely on matters outside the pleadings, and "where [the] defendant rebuts [the] plaintiff's unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction – and the plaintiffs do not counter that evidence – the allegation may be deemed refuted."

GCG Int'l, Inc. v. Eberhardt, 05 Civ. 2422, 2005 WL 2647942, at
*2 (S.D.N.Y. Oct. 17, 2005) (internal quotation marks omitted);
see also Bensusan Rest Corp. v. King, 937 F. Supp. 295, 298
(S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997).  The Court
must construe the pleadings and supporting affidavits in the
light most favorable to the plaintiff.  See CutCo Indus., 806
F.2d at 365; Bensusan, 937 F. Supp. at 298; see also Berwick v.
New World Network Int'l, 06 Civ. 2641, 2007 WL 949767, at
*9(S.D.N.Y. Mar. 28, 2007).

     Because neither the Copyright Act nor the Lanham Act
provide for nationwide service of process, this Court must look
to the personal jurisdiction rules of the forum state.  See
Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir.
2004); Fort Knox Music Inc. v. Baptiste, 203 F.3d 193, 196 (2d
Cir. 2000). The Court must therefore determine whether New York
law allows the exercise of personal jurisdiction and, if so,
whether doing so comports with constitutional due process
guarantees.  See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316
(1945); Clarendon, 152 F. Supp. 2d at 515; see also Landau v.
New Horizon, 02 Civ. 6802, 2003 WL 22097989, at *3 (S.D.N.Y.
Sept. 8, 2003).

     In this case the plaintiff argues that the Court has
specific jurisdiction over the defendants under New York Civil
Practice Law & Rules ("CPLR") §§ 302(a)(1) and 302(a)(3).

B.

The plaintiff first argues that jurisdiction is proper under CPLR § 302(a)(1) because the defendants are "doing business" in New York. CPLR § 302(a)(1) authorizes jurisdiction where the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). Under New York law, for § 302(a)(1) to apply, the cause of action must "arise out of" a defendant's activities in New York. See, e.g., CutCo Indus., Inc. 806 F.2d at 365.

Transacting business "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York." Broad Horizons, Inc. v. Central Crude Ltd., No. 94 Civ. 1593, 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (citation omitted); see also Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1259 (S.D.N.Y. 1995), aff'd, 201 F.3d 431 (2d Cir. 1999); Cavalier Label Co., Inc. v. Polytam, Ltd., 687 F. Supp. 872, 876 (S.D.N.Y. 1988). Courts in New York focus on "whether the defendant's conduct constitutes purposeful [] avail[ment] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Best Van Lines, Inc., v. Walker, 490 F.3d 239, 247 (2d Cir. 2007) (internal quotation marks omitted) (citations omitted); accord Fort Knox Music, Inc. v. Baptiste, 203 F.3d

8

193, 196 (2d Cir. 2000); see also CutCo Indus., Inc., 806 F.2d
at 365; Ainbinder v. Potter, 282 F. Supp. 2d 180, 187 (S.D.N.Y.
2003); Clarendon, 152 F. Supp. 2d at 516 (S.D.N.Y. 2001). The
courts consider a range of "purposeful activity," and even a
single transaction of business is sufficient to give rise to
personal jurisdiction under CPLR § 302(a)(1), if the claim
arises out of the transaction. See Citigroup Inc. v. City
Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) (collecting
cases); see also Obabueki v. I.B.M. Corp., Nos. 99 Civ. 11262,
99 Civ. 12486, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001)
(internal citations omitted).

                              i.

    The plaintiff contends that although there are multiple
bases for finding that the defendants "transact business" in New
York, operation of the Cigar500 website is sufficient grounds
for the Court to have jurisdiction over the Company. Operation
of an internet website gives rise to personal jurisdiction over
a non-domiciliary pursuant to CPLR § 302(a)(1) depending on the
"nature and quality of the commercial activity that the entity
conducts via the internet." Citigroup Inc., 97 F. Supp. 2d at
565 (internal citations omitted); Realuyo v. Villa Abrille, No.
01 Civ. 10158, 2003 WL 21537754, at *6-7 (S.D.N.Y. July 8,
2003). Courts in this district have found that the various uses
of an internet website fall within three basic categories along

a spectrum.  Jurisdiction over a defendant is generally not
appropriate where the "defendant makes information available on
what is essentially a 'passive' web site" which residents of New
York may visit.  See Citigroup Inc., 97 F. Supp. 2d at 565
(internal citations omitted); see also Realuyo, 2003 WL
21537754, at *6.  At the other end of the spectrum, jurisdiction
is proper when "a defendant clearly does business over the
internet" and "enters into contracts with residents of a foreign
jurisdiction that involve the knowing and repeated transmission
of computer files . . .if the claim arises from that business
activity."  Best Van Lines, Inc. 490 F.3d at 251.  The middle
category of internet activity consists of "defendants who
maintain an interactive website which permits the exchange of
information between users in another state and the defendant."
Id.  The exercise of jurisdiction in these situations depends on
the "level of interactivity and the commercial nature of the
exchange of information that occurs on the Web site."  Best Van
Lines, Inc. 490 F.3d at 251; see also Citigroup, 97 F. Supp. at
565; Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F. Supp. 2d
449, 456 (S.D.N.Y. 2000).  The Court of Appeals for the Second
Circuit has cautioned that a website's interactivity may be
useful for analyzing personal jurisdiction under § 302(a)(1),
"but only insofar as it helps to decide whether the defendant .
. . purposefully avail[ed] himself of the privilege of

10

conducting activities within New York, thus invoking the benefits and protections of its laws." <u>Best Van Lines, Inc.</u> 490 F.3d at 252 (internal quotation marks and citations omitted).

The Cigar500 website is clearly interactive and actually used to effect commercial transactions with customers in New York. The defendants acknowledge that the primary function of Cigar500.com is "an online source for cigars and related products." (AM Decl. ¶ 9.) On Cigar500.com, customers in New York can create a personal account with a password; "log-in" to this account on subsequent visits; place orders for products on the site and "checkout" online; request a catalog; and contact customer service by an automatically prompted email. (Compl. Ex. E). Furthermore, the record reflects that Cigar500 guarantees delivery in the United States, and has specifically conducted business transactions with New York residents, deriving approximately 10% of their total international revenue from sales to New York. (AM Decl. ¶ 22.) This activity would also appear to fall squarely within the portion of § 302(a)(1) that provides specific jurisdiction where a defendant contracts anywhere "to supply goods or services in the state."

Although the defendants argue that jurisdiction is inappropriate because the website does not specifically target consumers in New York, this argument is irrelevant. Courts in this district have never required that a substantially

interactive website target the residents of New York when there
is evidence that the defendant was transacting business via the
website in such a way that it "purposefully avail[ed] [itself]
of the privilege of conducting activities within New York." Best
Van Lines, Inc., 490 F.3d at 252. Here, it could not have
escaped Cigar500's notice that 10% of its international revenue
was being derived from sales into New York – especially in light
of the fact that the website specifically solicits United States
consumers. Thus, these activities clearly establish that
Cigar500 "purposefully avail[ed] [itself] of the privilege of
conducting activities within New York" and therefore was
"transacting business" in New York pursuant to § 302(a)(1).
Best Van Lines, Inc., 490 F.3d at 252; See Mattel, Inc. v.
Adventure Apparel, No. 00 Civ. 4085, 2001 WL 286728, at *3
(S.D.N.Y. Mar. 22, 2001) (finding personal jurisdiction based on
sale to New York customer through an interactive website);
Philip Morris USA Inc., v. Veles Ltd., No. 06 CV 2988, 2007 WL
725412, at *4-5 (S.D.N.Y. Mar. 12, 2007)(same); see also Warner
Bros. Entertainment Inc. v. Ideal World Direct, 516 F. Supp. 2d
261, 266-267 (S.D.N.Y. 2007); Student Advantage, Inc. v. Int'l
Student Exchange Cards, Inc., No. 00 Civ. 1971, 2000 WL 1290585,
at *4 (S.D.N.Y. Sept. 13, 2000) (jurisdiction based in part on
the defendant's operation of interactive commercial website);
cf. Seldon v. Direct Response Techs. Inc., No. 03 Civ. 5381,

12

2004 WL 691222, at *4-*5 (S.D.N.Y. Mar. 31, 2004) (maintenance of a website where the sole interactive feature is a message board accessible nationwide insufficient grounds for long-arm jurisdiction unless the defendant intended to target New York users).

Section 302(a)(1) also requires the plaintiff to show a "substantial relationship" or some "articulable nexus between the business transacted and the cause of action." McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981). Here, all five of the claims arise from the operation of the Cigar500.com website and have a substantial relationship to the actual commercial transactions that Cigar500 conducts with its United States customers, including those in New York. The Lanham Act and copyright claims arise from the use and placement of the plaintiff's protected "Cigar Aficionado" trademark and copyrightable material on the Cigar500 website. In addition, the plaintiff argues that the defendant's use was intended to create the "false impression that *Cigar Aficionado* promotes the Cigar500 website." (Pl. Opp. Mem. at 18.) The unfair competition, trademark dilution, and defamation claim are based on the similar allegation that Cigar500 used the "Cigar Aficionado" mark to imply the plaintiff's sponsorship and to encourage customers to register on the website and purchase Cuban cigars. Thus, it's clear that the plaintiff's claims are

13

substantially related to the commercial transactions that
Cigar500 conducts via its website.  See Mattel, Inc., 2001 WL
286728 at *4 (finding that copyright and trademark claims
pertaining to infringing website "arise from" defendant's sale
of product to New York customer).  Thus, personal jurisdiction
over Cigar500 pursuant to § 302(a)(1) is proper.

ii.

The plaintiff contends that long-arm jurisdiction extends
to Mr. and Ms. Masciangelo individually based on the business
transactions of Cigar500.  Under New York law, individuals may
be subject to jurisdiction "even if their dealings with the
forum State were solely in the corporate capacity" because the
"fiduciary shield doctrine" does not apply to the New York long-
arm statute.  Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 42
(N.Y. 1988); see Retail Software Servs., Inc. v. Lashlee, 854
F.2d 18, 22 (2d Cir. 1988).  However, "the fact that New York
does not adopt the fiduciary shield doctrine does not mean that
a corporate officer is automatically subject to long-arm
jurisdiction."  Merck & Co., Inc. v. Mediplan Health Consulting,
425 F. Supp. 2d 402, 419 (S.D.N.Y. 2006). The plaintiff still
must show that the corporation transacted business in New York
as the officer's agent. See Retail Software Servs., Inc., 854
F.2d at 22.

14

In order to make a prima facie showing of jurisdiction under an agency theory, the plaintiff does not need to establish a "formal agency relationship."  See Merck & Co., Inc., 425 F. Supp. 2d at 420.  The plaintiff must demonstrate that Cigar500 "engaged in purposeful activities in this State in relation to plaintiff's transaction for the benefit of and with the knowledge and consent of the . . . defendants, and that they each exercised some control over [the corporation] in the matter." Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998)(quoting Kreutter, 71 N.Y.2d at 467).  "At the heart of this inquiry is whether the out-of-state corporate officers were primary actor[s] in the transaction in New York that gave rise to the litigation, and not merely some corporate employee[s] . . . who played no part in it." Id. (quoting Retail Software Servs., Inc., 854 F.2d at 22). To make a prima facie showing of control "a plaintiff's allegations must 'sufficiently detail the defendants conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position . . . or upon conclusory allegations that the defendant controls the corporation." Id.

Here, the plaintiff argues that the individual defendants' alleged involvement with the Cigar500 website is sufficient to establish their knowledge of and control over the alleged

copyright and trademark infringements, as well as the benefit
they would derive therefrom. Construing the pleadings and
supporting affidavits in the light most favorable to the
plaintiff, there is a prima facie showing that Mr. Masciangelo
is subject to personal jurisdiction under an agency theory. The
complaint alleges that he is "a principal of Cigar500.com" and
that he is the "administrative contact" and "technical contact"
for that domain name. (Compl. ¶ 2.)  Mr. Masciangelo
corroborates his position as a principal, and also asserts that
he is a founder and 51% shareholder in Cigar500.  (AM Decl. ¶
15.)  Furthermore, Mr. Masciangelo acknowledges that he
initiated contract negotiations with the plaintiff, and that it
was actually his idea to post the infringing material on the
website as a part of a promotion for Cigar500. (AM Decl. ¶¶ 16-
18.) Thus, there is a prima facie showing that Mr. Masciangelo
was a "primary actor" in the infringing transactions, that he
exercised control over the website, and that the infringing
material was placed on the website with his knowledge and for
his benefit. Therefore the assertion of jurisdiction over Mr.
Masciangelo under an agency theory is appropriate.

    With respect to Ms. Masciangelo, the complaint solely
alleges that she is a "principal of Cigar500.com" and that she
is the "registrant" of the domain name. (Compl. ¶ 8.)  These
facts are insufficient to establish a prima facie showing of

16

agency.  As an initial matter, the plaintiff clearly fails to satisfy the "control" prong of the test. The plaintiff has not argued that Ms. Masciangelo was a "primary actor" in the use of the alleged infringing material, or alleged that she had any involvement whatsoever. The allegation that Ms. Masciangelo is a principal of the Company is insufficient because control cannot be shown based on title alone.  Karabu Corp., 16 F. Supp. 2d at 324 (collecting cases). Furthermore, this allegation is in direct conflict with Ms. Masciangelo's affidavit that states that she is not a principal, employee, shareholder, officer, or director of Cigar500.com. (MM Decl. ¶ 3.)  The plaintiff acknowledges this contradiction, yet fails to offer evidence or facts to refute the defendants' position.

The plaintiff also argues that because Ms. Masciangelo is the registered owner of the site, she is an agent of the corporation and therefore in "a position to exercise control over the Cigar500 Website's infringing content."  (Pl. Opp. Mem. at 15.)  However, the plaintiff fails to establish any "specific actions on the part of [Ms. Masciangelo], and a presumption is not enough."  Merck & Co., Inc., 425 F. Supp. 2d at 419-420. see also Karabu Corp., 16 F. Supp. 2d at 324 ("Courts have also routinely granted 12(b)(2) motions . . . where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand.")

17

Furthermore, the plaintiff's presumptions are undercut by Ms. Masciangelos' affidavit in which she admits that she is the registered owner of the domain name, but asserts that Cigar500.com Inc. is the true and beneficial owner. (MM Decl. ¶ 4, Ex. A.) Nor is the plaintiff's argument that Ms. Masciangelo is an "agent" of the company sufficient to establish jurisdiction. See, e.g., Sargent v. Budget Rent-A-Car Corp., No. 94 Civ. 9215, 1996 WL 413725, at *3 (S.D.N.Y. July 24, 1996) ("Pursuant to New York law, 'the acts of an agent may subject a foreign principal to personal jurisdiction; however, th[e] relevant] statutory provision[s] do[ ] not provide for the "reverse." [They] do [ ] not permit the acts of a principal to be imputed to a foreign agent to confer jurisdiction over the agent." (citation omitted) and (alterations in original).

Based on the facts in the record, the plaintiff has not made a prima facie showing of personal jurisdiction with respect to Ms. Masciangelo. However, the plaintiff has asked for leave to replead in the event that the Court found the factual allegations of the Complaint insufficient. Generally, leave to amend should be freely granted. See Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend should be granted in the absence of "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." Monahan v. New York City Dep't

18

of Corrections, 214 F.3d 275, 283 (2d Cir. 2000).  The defendants have made no showing that they would be prejudiced by the Court's granting the motion to amend the petition at this time, or that the plaintiff has engaged in undue delay or is acting in bad faith in seeking the amendment. Because it cannot be determined at this stage of the pleadings that the plaintiff will be unable to replead an adequate basis for jurisdiction with respect to Ms. Masciangelo, the Court grants the plaintiff leave to file an amended complaint within twenty days of the date of this opinion and order.

C.

The plaintiff argues in the alternative that the Court has jurisdiction over the defendants pursuant to CPLR § 302(a)(3). That section generally provides for specific jurisdiction over out-of-state defendants who, subject to certain limitations, commit a tortious act without the estate causing injury to a person or property within the state.  Because the Court finds that there is jurisdiction over Cigar500 and Mr. Masciangelo under § 302(a)(1), there is no need to address this allegation as to these two defendants.  Because there are insufficient allegations that Ms. Masciangelo committed any tortious act without the state, jurisdiction over her cannot be founded on CPLR § 302(a)(3).

D.

Jurisdiction over the defendants must also comport with the constitutional requirement of due process. There are two parts to the due process test for personal jurisdiction: the "minimum contacts" inquiry and the "reasonableness" inquiry. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). The minimum contacts inquiry requires that the court determine whether a defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction over the defendant. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Metropolitan Life, 84 F.3d at 567. In determining whether minimum contacts exist, courts must examine the "quality and nature" of the contacts under a totality of circumstances test, to determine whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . such that [the defendant] should reasonably anticipate being haled into court there." Best Van Lines, Inc., 490 F.3d at 242-243 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 and (1985)) (internal citations omitted). The court should consider the relationship among the defendant, the forum, and the litigation.  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984); Shaffer v. Heitner, 433 U.S. 186, 204 (1977); Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998). The

reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice" under the circumstances of the particular case. Calder, 465 U.S. at 788 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Court must take into account five factors in this inquiry: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. See Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113-14 (1987); see also Burger King Corp., 471 U.S. at 476-77; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Metropolitan Life, 84 F.3d at 568; Lechner v. Marco-Domo Internationales Interieur GMBH, 03 Civ. 5664, 2005 WL 612814, at *3 (S.D.N.Y. Mar. 14, 2005).

The exercise of jurisdiction over Cigar500 and Mr. Masciangelo would not violate the constitutional guarantee of due process because it satisfies the minimum contacts requirement and comports with "traditional notions of fair play and substantial justice." Calder, 465 U.S. at 788 (quoting

Milliken, 311 U.S. at 463). Cigar500 and Mr. Masciangelo have sufficient minimum contacts with the state of New York.  The Company operates an interactive, commercial website, which guarantees delivery of its products in the United States, and as a result has derived 10% of its international revenue from sales made to New York residents. In addition, there is evidence that Mr. Masciangelo has negotiated and entered into a contract on behalf of Cigar500 with the New York-based plaintiff for the placement of advertisements in one of the plaintiff's magazines. Although the contract was not the direct cause of the present action, it was during the negotiation process that the defendants posted the infringing material on their website. (Id. ¶¶ 15-20.) Thus, Cigar500 and Mr. Masciangelo could reasonably have expected to be subject to suit in New York where: 1) Cigar500, acting on behalf of Mr. Masciangelo, transacted steady business with New York residents via an interactive website; 2) Mr. Masciangelo, on behalf of Cigar500, was in the process of negotiating a business transaction with a New York-based company; and 3) these defendants chose to use this New York-based company's intellectual property for the purposes of soliciting commercial transactions in New York and elsewhere.

The exercise of jurisdiction over Cigar500 and Mr. Masciangelo would also be reasonable. While the defendants argue that defending a lawsuit in New York would place an unfair

financial burden on a small company, this argument is not persuasive in light of the purposeful actions that Cigar500 and Mr. Masciangelo took with respect to New York. Furthermore, New York has a substantial interest in protecting the intellectual property rights of copyright and trademark holders. Thus, jurisdiction over Cigar500 and Mr. Masciangelo comports with due process requirements.  See Sterling Interiors Group, Inc., No. 94 Civ. 9216, 1996 WL 426379, at 15, n.7 (S.D.N.Y. July 30, 1996)(noting that the Court of Appeals for the Second Circuit has held that an exercise of jurisdiction pursuant to the rule of Kreutter comported with due process requirements) (citing Retail Software Servs., Inc., 854 F.2d at 22-24)).


III.

A.

The defendants also move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to

relief that is plausible on its face." Twombly v. Bell Atlantic Corp, 127 S.Ct. 1955, 1974 (2007); see Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  In deciding the motion, the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Joseph v. Terrence Cardinal Cooke Health Care Center, No. 07 Civ. 9325, 2008 WL 892508, at *1 (S.D.N.Y. Apr. 2, 2008).

B.

i.

The defendants argue that the Court should dismiss the copyright claim because their use of the protected material constitutes "fair use" as a matter of law pursuant to 17 U.S.C. § 107.  "Fair use [in the copyright context] is a mixed question of law and fact."  Harper & Row Publishers v. Nation Enters., 471 U.S. 539, 560 (1985). "The four factors identified by Congress as especially relevant in determining whether the use was fair are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; (4)

24

the effect on the potential market for or value of the
copyrighted work." Id. at 560-561; see 17 U.S.C. § 107.

     The defendant has not pointed to any cases in this Circuit
that have granted a motion to dismiss on the grounds of fair
use. In fact, the Court of Appeals for the Second Circuit has
cautioned that due to the "fact-driven nature of the fair use
determination," courts should be cautious in finding fair use as
a matter of law even on a motion for summary judgment, although
the fact intensive inquiry does not protect a copyright holder
from summary disposition where there are no material factual
disputes. Wright v. Warner Books, Inc., 953 F.2d 731, 735 (2d
Cir. 1991); see also Blanch v. Koons, 467 F.3d 244, 251 (2d Cir.
2006) (the determination of fair use is "an open-ended context-
sensitive inquiry.")

     In this case, the material that was used – both the
magazine cover and the "Tasting Notes," which were not
insubstantial copying – were allegedly copied verbatim from the
plaintiff's magazine.  This factor weighs heavily against a
finding of fair use. See Harper & Row Publishers, Inc., 471 U.S.
at 565 (reproducing portions of copyrighted work verbatim is
evidence of the qualitative value of the copied material and
works against a finding of fair use). In addition, there are, at
the very least, issues of material fact as to the adverse impact
of the defendants' use of the copyrighted works on the market

25

for the plaintiff's product. For these reasons defendants' claim
of fair use cannot be decided on a motion to dismiss.   The
motion to dismiss the copyright claim is therefore denied.

ii.

The defendants also move to dismiss the plaintiff's claims
under the Lanham Act for trademark infringement, unfair
competition, and trademark dilution.   The defendants do not
argue that the plaintiff has not adequately pleaded these
claims; but rather that the defenses of classic fair use and
nominative fair use defeat these claims at the pleading stage.
Specifically, the defendants contend that their use of the
"Cigar Aficionado" trademark was a truthful and descriptive
reference, and thus not likely to cause confusion as a matter of
law.

The defendants argue that their use of the "Cigar
Aficionado" mark constitutes permissible fair use because it was
used in the descriptive sense to make a truthful and accurate
reference to the *Cigar Aficionado* magazine. The Lanham Act
provides that a truthful, non-deceptive, good faith use of a
trademark may be permitted where "the use of the name, term, or
device charged to be an infringement is a use, otherwise than as
a mark . . . which is descriptive of and used fairly and in good
faith, only to describe the goods or services of . . . [a] party
or their geographic origin." 15 U.S.C. § 1115(b)(4); see EMI

26

Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulus Inc., 228 F.3d 56, 64 (2d Cir. 2000); see also Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 73 (2d Cir. 1999) ("[F]air use permits others to use a protected mark to describe aspects of their own goods.") (citation omitted).

Here, the Court could not conclude as a matter of law that the defendants' use of the plaintiff's marks was primarily in a descriptive sense, and not in a trademark sense. See Merck & Co., Inc., 425 F. Supp. 2d at 412-413(S.D.N.Y. 2006) (denying motion to dismiss trademark infringement claim based on affirmative defense of classic fair use because plaintiff should have an opportunity to prove consumer confusion). The Court could not conclude as a matter of law on this motion that consumers would not be confused as to the plaintiff's possible sponsorship of the defendants' website based on the use of the plaintiff's mark.

The defendants also contend that their use constitutes nominative fair use as a matter of law. To establish a defense of nominative fair use: "'[f]irst, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the

trademark holder.'" <u>New Kids on the Block v. News Am. Publ'g,</u>
<u>Inc.</u>, 971 F.2d 302, 308 (9th Cir.1992); <u>see</u> <u>Chambers</u>, 282 F.3d
at 156.

    This issue also cannot be decided on a motion to dismiss
because there are issues of fact, at least with respect to both
the second and third elements of the defense, including whether
the defendant infringed the plaintiff's mark by using the
plaintiff's design, font or "other identifying characteristics"
and whether the defendants' use of the trademark created a
likelihood of confusion as to the plaintiff's sponsorship,
endorsement, or affiliation.  <u>See</u> <u>Merck & Co., Inc.</u>, 425 F.
Supp. 2d at 412-413 (citing <u>George Basch Co. v. Blue Coral,</u>
<u>Inc.</u>, 968 F.2d 1532, 1541 (2d Cir. 1992)).  The defendants
contend that their use of the "Cigar Aficionado" mark does not
suggest endorsement or sponsorship by the plaintiff of the
Cigar500 website.  "[T]he existence of consumer confusion
necessitates focusing on "the minds of the relevant purchasers—
an analysis based on a factual inquiry inappropriate to a motion
to dismiss."  <u>Id.</u> at 414(internal citation omitted).  The Court
cannot decide as a matter of law that the use of the "Cigar
Aficionado" mark on a website entitled Cigar500.com, in
conjunction with a salutation welcoming "*Cigar Aficionado*
Readers!" and an offer to sell the "6 Cuban Cigars *Cigar*

*Aficionado Rated 91 or Better!,*" would not create consumer confusion as to sponsorship or endorsement among consumers.

CONCLUSION

The Court has considered all of the parties' arguments. To the extent not explicitly discussed above, the arguments are either moot or without merit. For the reasons explained above, the defendants' motion to dismiss for lack of personal jurisdiction is denied as to Cigar500 and Anthony Masciangelo, and granted as to Monique Masciangelo. The plaintiff is granted leave to file an amended complaint within twenty (20) days of the date of this opinion and order. The defendants' motion to dismiss for failure to state a claim is denied.

SO ORDERED.

Dated:     New York, New York
           July 7, 2008

_____
           John G. Koeltl
     United States District Judge