UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
M. SHANKEN COMMUNICATIONS, INC.,                    :
                                                     :
                              Plaintiff,             :
                                                     :
                -against-                             :
                                                     :                    **No. 07-CIV-7371 (JGK)**
CIGAR500.COM INC. AND ANTHONY                        :
MASCIANGELO,                                         :
                                                     :
                              Defendants.            :
                                                     :
                                                     :
--------------------------------------------------------------- x
                                                    x

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS AND FORUM NON CONVENIENS MOTION

## ORAL ARGUMENT REQUESTED

**REED SMITH LLP**

Peter D. Raymond
Wallace B. Neel
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*M. Shanken Communications, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND..........................................................................................3

ARGUMENT..................................................................................................................8

      I.  DEFENDANTS' MOTION TO DISMISS BASED UPON
      ALLEGEDLY AUTHORIZED USE OF SHANKEN'S INTELLECTUAL
      PROPERTY IS REPETITIVE AND COULD BE SANCTIONABLE..................8

      II.  THE COURT SHOULD NOT DISMISS THE CASE ON FORUM
      NON CONVENIENS GROUNDS ................................................................11

            A.    Shanken's Choice of Its Home Venue Is All But Conclusive ..........12

            B.    There Is No Indication That The Canadian Court Is An
            Adequate Forum For The Adjudication of U.S. Copyright and
            Trademark Claims................................................................................14

            C.    The Public Interest Weighs Heavily in Favor of Adjudicating
            Shanken's U.S. Copyright and Trademark Rights in a U.S. Court............15

CONCLUSION..............................................................................................................16

## TABLE OF AUTHORITIES

### CASES

Adams v. Buck-Luce,
    No. 04-CV-1485 (JSR), 2005 WL. 822910 (S.D.N.Y. 2005) ...................................9

Aguinda v.Texaco, Inc.,
    303 F.3d 470 (2d Cir.2002) ...........................................................................11

In re GeoPharma, Inc. Securities Lit.,
    411 F. Supp. 2d 434 (S.D.N.Y. 2006) ...........................................................8

Greenlight Capital Inc. v. Greenlight (Switzerland) S.A.,
    No. 04 CV 3136 (HB), 2005 WL. 13682 (S.D.N.Y. Jan. 3, 2005)...........................12, 13, 15

Iragorri v. United Technologies Corp.,
    274 F.3d 65 (2d Cir. 2001) ...........................................................................11, 12, 13

Jose Armando Bermudez & Co.,
    No. 99 Civ. 9346(AGS), 2000 WL 1225792 (Aug. 29, 2000) ...............................14

Katz v. Mogus,
    No. 07 CV 8314 (PKC) 2008 WL 2605072 (S.D.N.Y. July 1, 2008) ................................9, 10

Martin v. Keycorp,
    50 Fed. Appx. 56, 57 (2d Cir. 2002).................................................................10

Motown Record Co., L.P. v. iMesh.com, Inc.,
    No. 03 Civ. 7339, 2004 U.S. Dist. LEXIS 3972 (S.D.N.Y. Mar. 12, 2004) ..........................14

National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.,
    319 F. Supp. 2d 352 (S.D.N.Y. 2004) .............................................................8

Norex Petroleum Ltd. v. Access Ind's, Inc.,
    416 F.3d 146 (2d Cir. 2005) ...........................................................................11

Richards v. Calvet,
    No. 99 Civ. 12172 (RJH/MHD), 2005 WL. 743251 (S.D.N.Y. 2005)................................ 8-9

Robinson v. National Cash Register Co.,
    808 F.2d 1119 (5th Cir. 1987) .......................................................................8

VictoriaTea.com., Inc. v. Cott Beverages, Canada,
    239 F. Supp. 2d 377 (S.D.N.Y. 2003) ...........................................................12

Wolters Kluwer Fin. Svcs. Inc. v. Scivantage, Adnane Charchour, Sanjeev Doss,
    Cameron Routh,
        525 F. Supp. 2d 448 (S.D.N.Y. 2007) ...............................................................8

World Film Servs. v. RAI Radiotelevisione Italiana S.p.A.,
    No. 97 Civ. 8627, 1999 U.S. Dist. LEXIS 985 (S.D.N.Y. Jan. 28, 1999)..............................15

Zaldivar v. Los Angeles,
    780 F.2d 823 (9th Cir. 1986) .........................................................................8

## STATUTES

12 U.S.C.A. § 95a (2006) ...................................................................4, 5, 6, 7

Plaintiff M. Shanken Communications, Inc. ("Shanken"), by its counsel, Reed Smith LLP, respectfully submits this Memorandum of Law and the accompanying Declaration of Peter D. Raymond, Esq., executed September 2, 2008 (the "Raymond Decl.") in opposition to the Motion to Dismiss (the "Motion") filed by *pro se* defendant Anthony Masciangelo ("Masciangelo") on behalf of both himself and defendant Cigar500.com, Inc. ("Cigar500," and, together with Masciangelo, "Defendants" and each a "Defendant").

## PRELIMINARY STATEMENT

The Motion is nothing more than a flagrant and improper gambit to inflict litigation costs upon Shanken, because the arguments in this Motion (other than the *forum non conveniens* issue) have already been considered and rejected by this Court.

Defendants filed a previous motion to dismiss on January 11, 2008 (the "Prior Motion") in which they argued precisely the same point they now argue: that the case should be dismissed because Defendants' claim that Shanken had authorized Cigar500 to use Shanken's copyrighted and trademarked materials on the www.cigar500.com website (the "Cigar500 Website"). The Court denied the Prior Motion. In denying the motion, the Court specifically noted that it had considered—and rejected—each and every one of Defendants' arguments. Despite that unequivocal ruling, Defendants have now repeated the same arguments in a subsequent motion, forcing Shanken to incur the substantial costs and fees required to oppose the same arguments again. Defendants' repetitive motion practice is entirely improper.

The Motion is also improper because it was filed by Masciangelo <u>and</u> Cigar500 *pro se*. The Court already ruled in connection with Orrick, Herrington & Sutcliffe's ("Orrick") motion for permission to withdraw as counsel that Cigar500 is barred by law from appearing without an

attorney. Nevertheless, Masciangelo has filed the instant Motion *pro se* on behalf of both himself and Cigar 500 with the apparent knowledge and consent of the Orrick firm.

Although Masciangelo purported to file the Motion on behalf of himself alone, the Motion clearly seeks relief on behalf of Cigar500 since it seeks dismissal of the case against the company. Moreover, the Canadian litigation which Masciangelo alleges in support of the Motion only involves the company. Masciangelo is not a party to that case.

Also disturbing is the fact that Cigar500's counsel Orrick, Herrington & Sutcliffe ("Orrick") was aware of the Motion and was even involved in the filing of the Motion.[1] The "document number" in the footer of each page of the Motion reads "OHS East"—plainly an identifier of the East Coast document database of *Orrick, Herrington, & Sutcliffe*. Also, Orrick informed Shanken's counsel that it was fully aware of what its client had done. (Raymond Decl. ¶¶ 3-6).

The Motion contains only one non-repetitive argument: Defendants seek dismissal based upon *forum non conveniens* grounds. That argument is completely unsupportable in fact or law. The automatic judicial presumption in favor of the plaintiff's choice of forum is at its strongest where, as here, Shanken has chosen its "home" forum to enforce its rights. That presumption is even further buttressed by the fact that the case is based upon United States trademark and copyright law, which is a matter of tremendous public interest and which this Court has held to be particularly ill-suited to adjudication by foreign tribunals.

For the reasons set forth herein, the Motion should be denied in its entirety.

---

[1]     Indeed, Orrick filed an Answer to the Amended Complaint on behalf of Cigar500 on August 11, 2008.

## FACTUAL BACKGROUND

**Defendants Unlawfully Display Shanken's**
**Intellectual Property on The Cigar500 Website**

Shanken holds several trademarks and copyrights related to *Cigar Aficionado* magazine,

which is an authoritative source among cigar smokers.  Amended Complaint, ¶ 1 (Raymond Decl.

Ex. A).

In April 2007, Shanken published the May/June 2007 issue of *Cigar Aficionado* magazine,

volume 15, number 4 (the "Cuba Issue"), which is an original publication of which Shanken owns

all right, title, and interest, including all copyrights.  Id. ¶ 10.  That issue of the magazine is

copyrightable subject matter and is the subject of a Certificate of Copyright Registration issued by

the Register of Copyrights on May 10, 2007. Id. ¶¶ 10, 16.

The front cover of the Cuba Issue is distinctive in appearance.  It bears an artistic

rendering of two palm trees against a blue sky, with the caption "CUBA TOMORROW."  The

front cover of the Cuba Issue also bears as a trademark a stylized rendering of the words "CIGAR

AFICIONADO."  Id. ¶ 12.  Several other federally registered trademarks appear within the Cuba

Issue as well.  Id. ¶ 17.

Page 128 of the Cuba Issue contains a portion of an article reviewing and rating several

Cuban cigars.  The *Cigar Aficionado* "Rating" of each cigar is expressed as a number on a scale of

1 to 100.  Below each cigar's name and Rating, Shanken includes a brief narrative, or "Tasting

Note," describing that particular cigar.  Id. ¶ 27.

In 2007, Defendants, who sell cigars through their www.cigar500.com website (the

"Cigar500 Website"), brazenly displayed several of Shanken's trademarks and copyrighted

images on that website, in a blatant attempt to increase their sales by implying that *Cigar

Aficionado* endorses or approves their website.

In particular, the first page that appears when a user navigates to www.Cigar500.com (the "Home Page") is headed "*Welcome Cigar Aficionado Readers!*" Id. ¶ 23. The Home Page is subdivided into several "frames," and the top frame on the right side of the Home Page contains a photographic image of the front cover of the Cuba Issue of *Cigar Aficionado*, under a paragraph of text that reads: "**ON SALE!  The 6 Cuban Cigars *Cigar Aficionado* Rated 91 or Better! Click Here to ORDER NOW!**" Id. ¶ 24. When the user "clicks here" as invited, he or she is redirected to a second web page (the "Offer Page") in the www.Cigar500.com domain.  The Offer Page also contains an image of the front cover of the Cuba Issue of Cigar Aficionado magazine. Id. ¶ 25.

The Offer Page sets forth an offer to sell six Cuban cigars for $89.95, and states "RATED 91 OR BETTER BY *CIGAR* AFICIONADO. 6 AUTHENTIC CUBAN CIGARS.  The 6 Cubans that *Cigar Aficionado* calls 'Outstanding' showcase the best that Cuba has to offer." Id. ¶26.

The Offer Page then sets forth a column listing several Cuban cigars and the *Cigar Aficionado* "Rating" of each cigar on a scale of 1 to 100.  Below each cigar's name and Rating is a brief narrative describing that particular cigar.  Id. ¶ 27.  The Ratings and the narratives are verbatim renderings of the Ratings and Tasting Notes on page 128 of the Cuban Issue, *viz.*:

RATED 97　　**MONTECRISTO NO. 2**
　　　　　　　The classic torpedo that no one can duplicate gives you all the cedar, spice, and tobacco character you can hope for.  Always draws like a dream.

RATED 96　　**COHIBA SIGLO VI**
　　　　　　　A combination of richness and finesse gives you just the right combination of power and class.  Cool smoke.

RATED 93　　**MONTECRISTO EDMUNDO**
　　　　　　　This gets better and better with lots of spicy cedar character and a full, rich finish.

RATED 93　　**TRINIDAD ROBUSTO EXTRA**
　　　　　　　The creamy texture and cedar notes say Cohiba, but the spicy, light earthy and vanilla flavors say Trinidad.

RATED 92    **HOYO DE MONTERREY PETIT ROBUSTO**
The Rich, toasty, and decadent character stimulates each taste bud in an elegant, creamy way. Quick satisfaction.

RATED 91    **PARTAGAS SERIE D NO. 4**
This is now the biggest-selling Cuban robusto and always delivers plenty of spicy, earthy decadent character. A classic Habano.

Id. ¶ 27.

The Home Page and the Offer Page printed out from the www.Cigar500.com web site are annexed to the Amended Complaint as Exhibits E and F, respectively, (Raymond Decl., Ex. A). Additionally, the Offer Page declares that

> All Cuban cigars advertised on Cigar500.com are guaranteed original Cubans. Your cigar order will arrive in original factory boxes. Every box is authenticated and sealed with the original Republic of Cuba "Original National Warranty Seal for Cigars and Cut Tobacco" from the originating factory in Cuba.
>
> **GUARANTEED DELIVERY IN THE USA**

Compl. ¶ 33.

Since 1963, shortly after the Castro revolution in Cuba, it has been a federal crime to import Cuban cigars into the United States under the Trading with the Enemy Act, 12 U.S.C. § 95a. 12 U.S.C.A. § 95a (2006). Accordingly, Defendants infringed upon Shanken's trademarks and copyrights by using an image of the magazine cover, the Tasting Notes, the name "Cigar Aficionado", and the stylized rendering of the words "Cigar Aficionado" on the Cigar500 Website; Defendants have defamed Shanken by asserting that Shanken encourages violations of the Trading with the Enemy Act; and Defendants have falsely associated Shaken with their illegal activities.

Shanken filed this action to protect its valuable intellectual property and eliminate any confusion being caused by Defendants' unauthorized use of Shanken's trademarks and copyrights.

**The Prior Motion to Dismiss Set Forth**
**The Same Arguments Masciangelo is Now Re-Urging**

On or about January 11, 2008, Defendants moved to dismiss all claims in the Complaint

(the "Compl.") based upon this Court's purported lack of jurisdiction over them, and further

moved to dismiss Plaintiff's claims for trademark and copyright infringement based upon the "fair

use" doctrine.

In support of the Prior Motion, Masciangelo faxed the Court a "reply" brief on March 5,

2008 (the "Reply") which stated that it was filed on behalf of Anthony Masciangelo, Monique

Masciangelo, and Cigar500. Reply at p. 1/28 (Ex. B to Raymond Decl.) [2]. In the Reply, the

Defendants argued that "[w]e are authorized to welcome Aficionado customers." Id. at p. 6/28.

As set forth below, the Court rejected those arguments, yet Masciangelo ha now

improperly raised them again in the instant Motion.

**Orrick Seeks to Withdraw and the Court Warns Defendants**
**That Cigar500 Must Appear By Counsel**

On or about March 4, 2008, Orrick moved for leave to withdraw as counsel for Cigar500

and Masciangelo. (Raymond Decl. Ex. C). The Court withheld ruling on that request pending its

decision on the Prior Motion. In so doing, the Court warned that "[t]he Defendants should be

aware that a corporation cannot appear in Court without a lawyer. . . ." March 6, 2008 Memo

Endorsement, at 1. (Raymond Decl. Ex. D)

**The Court Denies The Prior Motion**

On or about July 7, 2008, the Court issued an Opinion & Order denying Defendants' Prior

Motion, except granted it to the extent that it sought to dismiss all claims against Masciangelo's

---

[2]    The Reply's pages are unnumbered and thus will be referred to by the facsimile
transmission page numbers appearing at the top right corner of each page. In order to
leave those numbers visible, the Raymond Declaration has been bound on the side, rather
than on the top, as is customary.

wife Monique due to lack of personal jurisdiction. Opinion & Order, at p. 29 (Raymond Decl, Ex. E.)

In denying the Prior Motion, the Court expressly pointed out that it had "considered all of the parties' arguments" and had found those which were not discussed at length in the Opinion to be "either moot or without merit." Id.

**Shanken Files the Amended Complaint**

After the Court ruled that Monique Masciangelo's role as "Registrant" of the Cigar500 Website and shareholder in Cigar500 did not subject her to personal jurisdiction in this district, Shanken served and filed the Amended Complaint (Raymond Decl. Ex. A), which did nothing more than remove Monique Masciangelo as a defendant and remove the allegations concerning her potential liability.

Importantly, the Amended Complaint did not add a single allegation to the initial Complaint. The Amended Complaint is therefore substantively *narrower* than the original, as it contains nothing more than the initial Complaint contained and it *removes* the allegations concerning Monique Masciangelo.

Despite that fact, Defendants have now moved to dismiss the Amended Complaint based upon arguments that the Court has already rejected with respect to the initial Complaint.

**The Instant Motion Reiterates Many of The Same Arguments that
the Court Rejected When it Denied The Prior Motion**

Although the Court warned Defendants in the March 6, 2008 Memo Endorsement that "a corporation cannot appear in Court without a lawyer," Masciangelo blatantly defied that order when he filed the instant Motion *pro se* on behalf of both himself and Cigar500.[3]

_____

[3]    The Motion itself purports to be brought on behalf of both Defendants. See e.g., Motion, at 8-9 (discussing impact of New York litigation on Cigar500); id. at 3 (same). Indeed,
Continued on following page

Equally outrageous is the fact that the arguments made in the Motion have already been considered and rejected by the Court. Defendants ask the Court to dismiss the Amended Complaint because "Shanken cannot allege any Copyright or Trademark infringement because Shanken gave Cigar500 permission to use their copy and marks." Pl. Mem. at 10. However, that was <u>precisely</u> the argument that Defendants presented to the Court on the Prior Motion, wherein they argued that "[w]e are authorized to welcome Aficionado customers." Reply at p. 6/28 (Raymond Decl., Ex. B)

In denying the Prior Motion, the Court expressly pointed out that it had "considered all of the parties' arguments" and had found those which were not discussed at length in the Opinion to be "either moot or without merit." Opinion & Order, at 29 (Ex. E to Raymond Decl.).

## ARGUMENT

### I.

### DEFENDANTS' MOTION TO DISMISS BASED UPON ALLEGEDLY AUTHORIZED USE OF SHANKEN'S INTELLECTUAL PROPERTY IS REPETITIVE AND COULD BE SANCTIONABLE

The instant Motion is an improper attempt to take the proverbial "second bite at the apple" using the same arguments that the Court has already heard and rejected. Defendants have simply re-filed the same arguments in an attempt to inflict unnecessary costs upon Shanken.

As noted above, the Defendants' current argument is that the case should be dismissed because the use was allegedly authorized. Defendants made this same argument last March in the

---

Continued from previous page
given the nature of *forum non conveniens* dismissal, it would be a hollow victory to obtain the *forum non conveniens* dismissal the case against only one Defendant, because the action would remain in New York as against the non-moving Defendant.

- 8 -

Reply, and the Court considered and rejected it months ago.   (Raymond Decl. Ex. B at 6/28; id. Ex. E at 29).

The repetitive filing of motions to dismiss on identical grounds is improper and, not surprisingly, leads to the rejection of the arguments.  See In re GeoPharma, Inc. Securities Lit., 411 F. Supp. 2d 434, 444 (S.D.N.Y. 2006) ("Plaintiffs first repeat their argument from the first motion to dismiss that the desire to inflate the stock to activate the conversion feature of GeoPharma's financing agreements is a valid motive because it represents a "specific corporate transaction." This argument is no more convincing now . . . ."); Richards v. Calvet, No. 99 Civ.12172 (RJH/MHD), 2005 WL 743251, *2 and n.2 (S.D.N.Y. 2005) (rejecting argument because 'defendants generally repeat the argument they made unsuccessfully in their 2002 motion to dismiss' and stating that '[t]his argument has been considered-and rejected-on two previous occasions"); National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C., 319 F.Supp.2d 352, 370-71 (S.D.N.Y. 2004) ("Aker Stord's brief repeats all the arguments made by the Foreign BP and Non-BP Defendants, and the Court rejects them again for the reasons already stated.").

This Court not only disapproves of such repetitive motion practice, but has also gone as far as sanctioning the moving parties—including *pro se* parties—where the circumstances warranted sanctions. "The repetitive presentation of previously rejected positions generally constitutes an 'improper purpose,' as it is harassment." Wolters Kluwer Financial Services Inc. v. Scivantage, Adnane Charchour, Sanjeev Doss, Cameron Routh,  525 F. Supp. 2d 448, 541 n.337 (S.D.N.Y. 2007), quoting Zaldivar v. Los Angeles, 780 F.2d 823, 832 (9th Cir. 1986) (filing of successive complaints based upon proposition of law previously rejected constitutes harassment); Robinson v. National Cash Register Co., 808 F.2d 1119, 1130 (5th Cir. 1987) ("the filing of successive motions ..." could "constitute an improper purpose under Rule 11 such as harassment or delay").

The Court has imposed sanctions on parties that indefensibly file vexatious and repetitive pleadings and papers. In <u>Adams v. Buck-Luce</u>, No. 04-CV-1485 (JSR), 2005 WL 822910 (S.D.N.Y. 2005), Judge Rakoff sanctioned a plaintiff and it attorneys in the amount of defendant's fees and costs when plaintiff repeatedly named a law firm as a defendant in successive complaints, only to withdraw the action as to that law firm in each instance and then re-insert the law firm in the next amended complaint. "This history portrays, unequivocally, that plaintiffs' claims . . . and their conduct toward that firm, in general, were intended simply to harass that firm in a manner forbidden by Rule 11(b)(1)" <u>Id.</u> at *2.

In a case strikingly similar to the case at hand, this Court imposed a $500 fine on a *pro se* litigant who filed a repetitive motion to dismiss. <u>Katz v. Mogus</u>, No. 07 CV 8314 (PKC)(KNF), 2008 WL 2605072, *2 (S.D.N.Y. July 1, 2008), *no sub. hist. reported*. In <u>Katz</u>, the Court acknowledged that "[t]he submissions of a *pro se* litigant are to be construed liberally by a court, and read "to raise the strongest arguments that they suggest." <u>Id.</u> at *1. However, even with that accommodating standard in mind, the Court found that the *pro se* defendant's "repetitive and frivolous" filing of motions to dismiss on grounds that had already been rejected constituted a violation of Rule 11:

> [N]o objectively reasonable analysis could lead to the conclusion that presenting motions to a court for relief, *under theories that had previously been rejected as merit less by a judicial officer, during an earlier stage of the litigation, is in keeping with either Fed.R.Civ.P. 1 and 11 or the law-of-the-case doctrine*, which holds that a decision on an issue of law made at one stage of a case should continue to govern the same issue in subsequent stages of the same litigation.

<u>Id.</u> at *2. <u>See also</u> <u>Martin v. Keycorp</u>, 50 Fed. Appx. 56, 57 (2d Cir. 2002) (affirming sanctions against a *pro se* litigant in view of that litigant's "long history of repeated attempts to relitigate claims already adjudged against him.")

The fact that the defendant in <u>Katz</u> was *pro se* was taken into consideration, but ultimately was not sufficient to prevent the court from sanctioning him for repetitive and unjustifiable motion practice.[4]

There has never been any basis for dismissing the case based upon Defendants' conclusory claim that their use of Cigar500's intellectual property was authorized. That was the Court's conclusion in June, and it should be the Court's conclusion now. Moreover, Shanken respectfully submits that at a minimum, Defendants should be warned that during the remainder of this litigation, they will be held to the standard of conduct prescribed by Rule 11. Defendants' failure to do so in this Motion has imposed upon Shanken tens of thousands of dollars in costs and attorneys' fees necessary to oppose the Motion. While it is understandable that the existence of a *pro se* movant (albeit one aided by counsel) may cause the Court to permit broad latitude in argumentation, that latitude is not without limit.

Moreover, this Motion was filed on behalf of Cigar500, which is represented by Orrick. Orrick was not willing to put its name on the Motion, but died permit its client to file it on its own. Therefore, the high standards applied to counsel who practice before this Court should be applied here.

## II.

### THE COURT SHOULD NOT DISMISS THE CASE ON FORUM NON CONVENIENS GROUNDS

The Second Circuit has adopted a three-part inquiry with respect to *forum non conveniens*. District Courts must "determine the degree of deference to which plaintiffs' choice is entitled, the

---

4    While the Court may understandably be cognizant that a *pro se* litigant is not as astute as a practitioner with respect to the requirements of Rule 11, Masciangelo's *pro se* status does not entirely relieve him of the responsibility to comply with Rule 11, and it certainly does not relieve Cigar500 (which *must* be represented by counsel) of such responsibility to comply.

balance of hardships to the respective parties as between the competing fora, and the public

interest factors involved." Iragorri v. United Technologies Corp., 274 F.3d 65, 75 (2d Cir. 2001).

Contrary to Defendants' claim, it is the movant, not the plaintiff, that bears the burden of

proving that the three-part test has been met.  Aguinda v.Texaco, Inc., 303 F.3d 470, 476 (2d

Cir.2002).  Defendants have turned the inquiry on its head when they claim that "Shanken have

not provided any substantial reason or proof of why this complaint should not be dismissed for

forum non conveniens." Motion, at 10.

Defendants cannot carry that burden here.

## A.    Shanken's Choice of Its Home Venue Is All But Conclusive

The starting point for any discussion of *forum non conveniens* is that "the greatest

deference is afforded a plaintiff's choice of its home forum." Norex Petroleum Ltd. v. Access

Ind's, Inc., 416 F.3d 146, 154 (2d Cir. 2005).

> The more it appears that a domestic or foreign plaintiff's choice of
> forum has been dictated by reasons that the law recognizes as
> valid, the greater the deference that will be given to the plaintiff's
> forum choice. Stated differently, the greater the plaintiff's or the
> lawsuit's bona fide connection to the United States and to the
> forum of choice and the more it appears that considerations of
> convenience favor the conduct of the lawsuit in the United States,
> the more difficult it will be for the defendant to gain dismissal for
> *forum non conveniens*.

Irrigori, at 71-72.  See also VictoriaTea.com., Inc. v. Cott Beverages, Canada, 239 F.Supp.2d 377,

381 (S.D.N.Y.2003) ("the deference afforded to a plaintiff's choice of forum grows stronger where

that plaintiff is a U.S. citizen whose claims arise under U.S. law.").

Shanken is based in Manhattan and operates its worldwide enterprise from this district.

Shanken witnesses inevitably work and/or reside here, and the evidence Shanken will present is

located here.  In such a situation, the choice of the "home" forum is all but conclusive of the issue.

See Greenlight Capital Inc. v. Greenlight (Switzerland) S.A., No. 04 CV 3136 (HB), 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005) ("this analysis weighs in favor of Greenlight Capital, as Greenlight resides in this District and its claims are based on trades that occurred on markets that exist in this District.")

That presumption is amplified where, as here, there is reason for the Court to skeptically view Defendants' motives in seeking to move this case to Ontario, Canada. Because "just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons," the Second Circuit has warned that courts should

> arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum. And the greater the degree to which the plaintiff has chosen a forum where the defendant's witnesses and evidence are to be found, the harder it should be for the defendant to demonstrate inconvenience.

Iragorri v. United Technologies Corp., 274 F.3d 65, 75 (2d Cir. 2001).

The witnesses and evidence in this case are overwhelmingly located in and around Manhattan. All of Shanken's witnesses reside in or around New York City, and Defendants here have already taken the position that their central witness will be Barry Abrams, a Shanken employee. Motion, at Ex. H, I. Defendants' arguments on this point are absurd. They claim that "a warehouse with hundreds of pieces of sales material" is "only available in Canada" (Motion at p. 8) without addressing the obvious fact that the materials can simply be copied and sent here. Indeed, if Defendants have no intention of making the relevant documents available here in New York, they will be subject to a default judgment for failure to comply with their discovery obligations.

Defendants' argument that "there is no appropriate venue or forum to potentially settle the lawsuits if they are divided in 3 jurisdictions" (Motion at 2), is also nonsense:  common parties can settle litigation in a hundred jurisdictions simultaneously.  Indeed, even if "single jurisdiction settlement" were a relevant consideration, it would not apply here because Masciangelo himself is not a party to the Canadian action.  Defendants' claim that "settlement" is a factor in favor of *forum non conveniens* dismissal is indicative of the lack of merit in this Motion.

**B.      There Is No Indication That The Canadian Court Is An Adequate Forum For The Adjudication of U.S. Copyright and Trademark Claims**

The second part of the three-part test is whether an adequate alternative forum exists. Iragorri, 274 F.3d at 73.  Here, Defendants have failed to carry the burden of proving that a Canadian court is an adequate alternative forum for the adjudication of this U.S. trademark and copyright dispute.

Where trademark and copyright disputes are involved, this Court rejects the view that foreign tribunals constitute adequate alternative fora.  In Greenlight Capital, the Court denied a *forum non conveniens* motion because there was no indication that a Swiss court could properly adjudicate a U.S. trademark claim.  "As the record does not reflect that Swiss courts permit the consideration of U.S. trademark claims, Switzerland cannot be considered an adequate alternative forum." Greenlight, at *6.

The Court's skepticism concerning the application of U.S. trademark and copyright law in foreign courts is well-established and well-founded.  See Motown Record Co., L.P. v. iMesh.com, Inc., No. 03 Civ. 7339, 2004 U.S. Dist. LEXIS 3972, at *20 (S.D.N.Y. Mar. 12, 2004) (denying *forum non conveniens* dismissal where defendants did not demonstrate that Israeli courts were capable of enforcing U.S. intellectual property laws); Jose Armando Bermudez & Co., No. 99 Civ. 9346(AGS), 2000 WL 1225792, *4 (Aug. 29, 2000) (finding that the Dominican Republic was not

- 14 -

an adequate alternative forum because the record failed to demonstrate that Dominican courts could properly adjudicate U.S. trademark infringement claims).

As noted above, it is Defendants' burden to prove that an adequate alternative forum exists for the adjudication of the U.S. trademark and copyright claims. However, Defendants do not even attempt to claim that a Canadian court could adjudicate U.S. copyright and trademark law; the most that Defendants claim is that "American Copyright and Trademark law has Canadian equivalent." Motion at 2. Thus, in Defendants' view, Shanken should seek to enforce its rights under *Canadian* law. That position is facially absurd.

Because there is no indication on the record before the Court that a Canadian tribunal has either the power or the expertise to adjudicate U.S. trademark and copyright claims, Defendants have not carried their burden to demonstrate the existence of an adequate alternate forum, and thus dismissal on *forum non conveniens* grounds is improper.

C.    **The Public Interest Weighs Heavily in Favor of Adjudicating Shanken's U.S. Copyright and Trademark Rights in a U.S. Court**

The strong presumption that a domestic plaintiff should be permitted to lay venue in its district of residence is amplified where, as here, the causes of action arise under United States trademark and copyright law. "The public interest in having local controversies adjudicated locally is particularly important here. The U.S. trademark laws are primarily consumer protection laws, designed to shield domestic consumers from fraud and deception in the marketing and sales of products." Greenlight Capital, at *6.

Moreover, litigants who create and employ intellectual property in the United States have an expectation that the federal courts of the United States will protect their property rights. World Film Servs. v. RAI Radiotelevisione Italiana S.p.A., No. 97 Civ. 8627, 1999 U.S. Dist. LEXIS 985, at *26 (S.D.N.Y. Jan. 28, 1999) ("It is well-settled that the United States has an interest in

- 15 -

protecting the intellectual property rights of its citizens.")

The public interest in this case tips entirely in favor of trying this case in this Court, rather than in a foreign tribunal. Shanken's rights under United States trademark and copyright laws, and the public's expectation that they can rely upon the genuineness of goods and services that bear Shanken's marks, should not be left to a foreign court for interpretation and enforcement.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion should be denied on the dual grounds that it is procedurally improper and without merit, and the Court should grant Plaintiff such other and further relief as it deems just, proper, and equitable.

Dated: New York, New York
      September 2, 2008

REED SMITH LLP

By:_____
      Peter D. Raymond
      Wallace B. Neel
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*M. Shanken Communications, Inc.*

- 16 -